## M. T. SMITH & SONS DRILLING CO. et al. v. BREED et al.

No. 21457. Opinion Filed Dec. 9, 1930.

Owen & Looney, J. Fred Swanson, and Paul N. Lindsey, for petitioners.

Paul F. Showalter, for respondents.

CULLISON, J. This is an original proceeding in this court commenced by M. T. Smith & Sons Drilling Company, and the United States Fidelity & Guaranty Company, petitioners, to review an order and award of the State Industrial Commission, dated May 20, 1930, wherein the Commission awarded respondent, Bud L. Breed, 47 weeks and 3 days' compensation for temporary total disabilty at the rate of $18 per week, and 200 weeks for 40 per cent. permanent partal disability, at the same rate, due to a fracture of the skull sustained in the same injury.

The claimant, Bud L. Breed, while employed in the capacity of what is commonly known as a "rough-neck" by the petitioner, Drilling Company, sustained an injury to his arm and a fractured skull.

It stands admitted that the injuries arose out of and in the course of respondent's employment with petitioner.

The history of the proceedings had before

the Industrial Commission, in this case, and the Commission's orders are sufficiently stated in the final order of the Commission on May 20, 1930, wherein the Commission made the following findings and orders:

"(1) That the claimant, Bud L. Breed, sustained an accidental personal injury on the 14th day of January, 1928, arising out of and in the course of his employment with the respondent, the same being a hazardous employment covered by and subject to the provisions of the Workmen's Compensation Law. That as a result of said accidental injury claimant sustained a fracture of the right arm at the elbow, also a fracture of the skull with loss of considerable portion of the parietal bone.

"(2) That the average daily wage of claimant at the time of the said accidental injury was $7 per day.

"(3) That as a result of the aforesaid injuries, claimant was temporarily totally disabled from the 14th day of January, 1928, until the 15th day of December, 1928, or for a period of 47 weeks and 3 days beyond the 5-day waiting period.

"(4) That heretofore, on the 3rd day of October, 1928, the Commission made an order and award finding that the claimant, by reason of the aforesaid injuries, sustained a 50 per cent. permanent loss of the use of claimant's right arm, and awarded claimant 125 weeks' compensation at the rate of $18 per week, and at the same time in said order finding that claimant sustained a 25 per cent. permanent total disability entitling claimant to 125 weeks' compensation at the rate of $18 per week as a result of the injury to claimant's head. That on October 11, 1928, the respondent and its insurance carrier filed a motion to vacate said order, which motion was sustained by the Commission. That, thereafter, the Commission, on October 25, 1928, made an order and award finding that the claimant was entitled to compensation for 125 weeks at the rate of $18 per week, the same being 50 per cent. permanent loss of the use of claimant's right arm, and further finding that the claimant sustained at the same time an injury to his head with partial loss of the left parietal bone, causing dizziness and resulting in permanent disability to the extent of which at that time was undetermined; that in said order and award of October 25, 1928, no compensation for temporary total disability, as the result of said accidental injuries, was awarded to claimant.

"(5) That by reason of said injury to claimant's head resulting in a fractured skull and partial loss of left parietal bone, he has sustained a 40 per cent. permanent partial disability to performing manual labor, the same being 200 weeks' compensation at the rate of $18 per week. * * *"

Based upon such findings, the Commission therefore held respondent entitled to 47 weeks and 3 days' compensation for temporary total disability at the rate of $18 per week in the aggregate sum of $855; and further held respondent entitled to compensation at the rate of $18 per week for a period of 200 weeks, the same being compensation for 40 per cent. permanent partial disability due to the fracture of the skull and loss of a portion of the left parietal bone.

From the above order and award petitioners come to this court on appeal.

At the outset it is well to state, and it is not disputed by the parties to this appeal, that the award made by the Commission in its order of October 25, 1928, wherein respondent was allowed 125 weeks' compensation at the rate of $18 per week, for 50 per cent. permanent loss of his right arm, is not here questioned. The record herein discloses a receipt approved by the Commission evidencing the fact that respondent has received all moneys due him from the petitioners for the 50 per cent. permanent loss of his right arm.

This judicial inquiry into the correctness of the award made by the Commission, May 20, 1930, set out above, is limited to the following proposition complained of by petitioners in their brief:

First.

"The first question presented by this appeal is whether the Commission erred in allowing an award of $18 per week for permanent partial disability."

It will be observed that in the order of May 20, 1930, the Commission found respondent had sustained a 40 per cent. permanent partial disability to perform manual labor, due to the skull injury, and awarded respondent therefor compensation for 200 weeks at the rate of $18 per week.

Petitioners contend that the rate of compensation for permanent partial disability is 62 2/3 per cent. of the difference between respondent's average weekly wage and his earning capacity after the accident.

The applicable statutory provision for permanent partial disability is subdivision 3 of section 7290, C. O. S. 1921, as amended by chapter 61, S. L. 1923, as follows:

"Section 7290. The following schedule of compensation is hereby established: * * *

"3. Permanent Partial Disability: In case of disability, partial in character but permanent in quality, the compensation shall be 66 2/3 per centum of the average weekly

wages, and shall be paid to the employee for the period named in the schedule as follows."

Immediately following paragraph 3, above, follows a schedule for compensation for permanent partial disability for different injuries, none of which cover the injury herein complained of, that is, fractured skull. However, the injury herein is provided for by the last paragraph of subdivision 3, sec. 7290 (as amended by ch. 61, S. L. 1923), above, which reads as follows:

"Other Cases. In this class of disabilities the compensation shall be 66 2/3 per centum of the difference between his average weekly wages and his wage earning capacity thereafter in the same employment or otherwise payable during the continuance of such partial disability, not to exceed 300 weeks, but subject to reconsideration of the degree of such impairment by the Commission on its own motion or upon the application of any party in interest."

The Commission in its order heretofore referred to found that the average daily wage of respondent at the time of the accidental injury was $7 per day.

The evidence in this case discloses that the average daily wage of respondent up to the date of the accident was from $12 to $15 per day.

The uncontradicted testimony of respondent and that of fellow workmen, who testified in his behalf, is that the respondent before the injury had worked for petitioner, Drilling Company, herein, for 3 or 4 years as a driller at from $12 to $15 per day. This evidence is not contradicted by petitioners. It does appear from the record that 4 days prior to the date of the accident, the respondent had temporarily been put to work as a "roughneck" at $7 per day, but the record also discloses that this work was only temporary in duration.

The only evidence in support of the finding by the Commission that respondent's average daily wage was $7 per day is the fact that for the short period of 3 or 4 days prior to and at the date of the accident respondent was working for them temporarily at $7 per day.

Under the third subdivision of section 7290, supra, the compensation herein awarded is to be predicated upon "the average weekly wages" of respondent; and under that subdivision of section 7290, under which this case falls, the compensation shall be 66 2/3 per centum of the difference between his **average weekly wages** and his wage earning capacity thereafter in the same employment or otherwise payable during the continuance of such partial disability."

We are of the opinion that the Legislature in designing that the compensation in this class of case should be computed upon respondent's "average weekly wage" at the time of the injury, intended that the "average weekly wage" should be computed upon what the evidence shows to have in fact been the average weekly wage of claimant at the time of the injury, and not upon the daily wage received by claimant while engaged in other business for his employer, when the evidence shows conclusively that respondent at that time was engaged in temporary work for a period of only a few days, which work was not the ordinary and usual work performed by respondent for petitioner, and which wage was not the ordinary and usual wage paid respondent by petitioner.

The Commission in its order did not make any finding as to respondent's wage earning capacity since the date of the injury. We have, however, examined the evidence, both at the original hearing and at the subsequent hearing to reopen this case, and find that respondent has been engaged in the capacity of "roughneck" for various concerns since the date of the original injury, and that his average wage therefor has been $7 per day.

In view of the foregoing facts, we must conclude that the Commission did not err in fixing the weekly award herein at $18 per week, the maximum allowed by the statute (section 7290, C. O. S. 1921, as amended by chapter 61, S. L. 1923.)

The average weekly wage of respondent prior to the accident was $81; the respondent's wage earning capacity since the date of the injury, as disclosed by the record, is $42 per week. The difference between respondent's average weekly wages at the date of the injury and subsequent thereto is, therefore, $39. Sixty-six and two-thirds per centum of that difference, as called for by section 7290, C. O. S. 1921, as amended by chapter 61, S. L. 1923, is $26.

It, therefore, follows that the weekly award of $18 made by the Commission, when tested by the statute, supra, fixing the compensation in cases of this nature, is amply supported by the evidence, and the same will, therefore, not be disturbed by this court on appeal.

### Second.

The second contention raised by petition-

ers is that the Commission erred in computing the 40 per cent. permanent partial disability on the basis of 500 weeks. Petitioners further contend:

"That the award of 40 per cent. permanent partial disability should be 40 per cent. of 300 weeks allowed for permanent partial under the statute, rather than 40 per cent. of 500 weeks allowed for permanent total."

The answer to this contention is found in the following applicable sections of our statutes.

Section 7290, C. O. S. 1921, as amended by chapter 61, S. L. 1923, contains four separate paragraphs making specific provisions for each class of disability.

"Section 7290. The following schedule of compensation is hereby established:

"1. Permanent Total Disability: In the case of total disability adjudged to be permanent, 66 2/3 per centum of the average weekly wages shall be paid to the employee during the continuance of such total disability **not exceeding 500 weeks. * * ***

"3. Permanent Partial Disability: In case of disability, partial in character but permanent in quality, the compensation shall be 66 2/3 per centum of the average weekly wages, and shall be paid to the employee for the period named in the schedule as follows: * * *

"Other Cases: In this class of disabilities, the compensation shall be 66 2/3 per centum of the difference between his average weekly wages and his wage earning capacity thereafter in the same employment or otherwise payable during the continuance of such partial disability, **not to exceed 300 weeks. * * ***" (Emphasis ours.)

As we have heretofore stated, the head injury herein is classified under the last paragraph of subdivision 3, above, entitled "Other Cases," which paragraph makes provision for injuries to the parts of the body not enumerated elsewhere in that section.

Under that paragraph the respondent is entitled to 66 2/3 per centum of the difference between his average weekly wage and his wage earning capacity thereafter, for such permanent partial disability, which was the extent of respondent's disability herein, **for a period not to exceed 300 weeks.**

The Commission in its award herein held:

"That by reason of said injury to claimant's head resulting in a fractured skull and partial loss of the left parietal bone, he has sustained a 40 per cent. permanent partial disability to perform manual labor, the same being 200 weeks' compensation at the rate of $18 per week. * * *"

The maximum award for permanent partial disability in "other cases" of permanent partial disability is 300 weeks. The Commission's finding was "a 40 per cent. permanent partial disability. to performing manual labor, the same being 200 weeks. * * *" There is no provision of the Workmen's Compensation Act authorizing such a finding under the facts shown by this record.

The Industrial Commission should have found the difference between the average weekly wage and the wage earning capacity thereafter in the same employment or otherwise payable, and should have awarded 66 2/3 per cent. of that difference, not to exceed $18 per week, less the five-day waiting period, for such number of weeks, not to exceed 300, as the Industrial Commission determined the degree of impairment warranted, subject to reconsideration of the degree of such impairment by the Commission on its own motion or upon the application of any party in interest.

The Commission was in error in making the award in the form in which it was made. We are unable to determine from the record whether or not it was in error as to the amount thereof.

We, therefore, hold that the Commission erred in computing the 40 per cent. permanent partial disability on the basis of 500 weeks.

### Third.

The third contention of petitioners is:

"The award of October 25, 1928, was res judicata as to respondent's claim for temporary total disability."

In its order of October 25, 1928, the Commission awarded respondent compensation at the rate of $18 per week for 125 weeks for 50 per cent. loss of respondent's right arm.

The Commission in said order further found that the respondent had sustained, at the same time and as a result of said accidental injury, an injury to his head with partial loss of the left parietal bone, causing dizziness and resulting in disability, the extent of which at that time was undetermined. In said order of October 25, 1928, therefore, no compensation for temporary total disability as a result of said accidental injuries was awarded respondent, because the extent of such disability could not at that time be determined: the Commission recognized this fact and, therefore, left the award open as to this question until such time as the degree of temporary total disability could be determined.

This court has held that, under our Workmen's Compensation Law, the Industrial Commission is authorized to award temporary total disability as a specific injury, notwithstanding the same may subsequently become a permanent partial disability for which compensation may be awarded.

In Thompson v. State Industrial Commission, 138 Okla. 166, 280 Pac. 597, this court held:

"Under section 7290, Compiled Oklahoma Statutes 1921, as amended by chapter 61, sec. 6, Session Laws 1923, the State Industrial Commission may make an award for temporary total disability as a specific injury, notwithstanding that the same may subsequently become a permanent partial disability for which compensation may be awarded."

The court in the above case further held:

"Where the State Industrial Commission makes an award for permanent partial disability without considering or passing upon the question of temporary total disability, and the record discloses that petitioner was temporarily totally disabled for a period of time, said award will be reversed on review by this court."

In the body of the opinion the court said:

"As stated in the Smith & McDannald v. State Industrial Commission Case, supra (133 Okla. 77, 271 Pac. 142) the period of temporary total disability is that temporary period after the accident during which the injured employee is totally incapacitated for work by reason of illness caused by the injury. It is during that period that the law authorizes the award of compensation for temporary total disability. * * *"

Petitioners in their brief admit:

"The respondent was clearly entitled to compensation for temporary total disability at the date of the first hearing"

—but contend that the Commission at that time was required to determine the extent of the disability and make an appropriate award in addition to the award for 50 per cent. loss of use of respondent's right hand.

With this contention we cannot agree.

In so far as this third contention is concerned, the question of temporary total disability in this case was never closed. The order of October 25, 1928, was only for compensation for 50 per cent. loss of the use of respondent's right arm. No temporary total disability award was made at that time for either respondent's arm injury or head injury. The Commission in its order of October 25, 1928, states:

"That by reason of said accident respondent sustained multiple injuries consisting of a fracture of the skull with considerable loss of the left parietal bone, causing dizziness and resulting in permanent disability, the extent of which is unknown at this time"

—clearly indicating that no compensation whatsoever had been paid respondent for the temporary total disability or for a percentage of total disability for the injury to the respondent's head.

The only point in said order of October 25, 1928, that became res judicata was the Commission's finding of 50 per cent. loss of use of respondent's right arm, and that particular part of said order became final and is admitted by the parties to have become final, and is not questioned on this appeal.

The Commission never passed or adjudicated the question of temporary total disability of respondent, but by its order of October 25, 1928, specifically left this question open, subject to further consideration by the Commission, and the Commission, under our "continuing jurisdiction" statute, section 7325, C. O. S. 1921, as amended by chapter 61, sec. 13, Session Laws 1923, never lost jurisdiction to pass upon and make findings and orders as to this particular question.

It follows, therefore, that the Commission in its order of May 20, 1930, herein complained of, wherein the extent of respondent's permanent disability due to the skull injury was determined, had jurisdiction to make an award for temporary total disability due to said accidental injuries.

The award made by the Commission to respondent for temporary total disability from January 14, 1928, to December 15, 1928, a period of 47 weeks and 3 days beyond the 5-day waiting period, at $18 per week, being purported by the evidence, will not be disturbed by this court on appeal.

This case is reversed and remanded to the State Industrial Commission, with directions to vacate its order and award made on May 20, 1930, and to make a finding, determination, and award in conformity herewith.

In all other respects, the orders and awards made by the Industrial Commission herein are affirmed.

MASON, C. J., LESTER, V. C. J., and RILEY, HEFNER, SWINDALL, and ANDREWS, JJ., concur. CLARK, J., dissents. HUNT, J., absent.