WAL–MART STORES, INC. and National Union Fire Insurance Company, Petitioners/Appellants,

v.

Jennie SWITCH and the Workers' Compensation Court, Respondents/Appellees.

No. 81567.

Supreme Court of Oklahoma.

May 31, 1994.

Jerry Beavin, Bower, Beavin & Weeks, Oklahoma City, for petitioners/appellants.

Fred L. Boettcher & Walt Brune, Boettcher & Brune, Ponca City, for respondents/appellees.

WATT, Justice:

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

Respondent Jennie Switch sustained an injury while working for petitioner Wal–Mart Stores, Inc., and filed a claim for workers' compensation benefits. At the hearing, the parties stipulated that Switch had worked at her job an average of seven hours per day, five days a week for approximately two years. They also stipulated that during the year preceding her injury, Switch was paid at the rate of $4.65 per hour for the first 36 weeks, $4.85 per hour for the next six weeks and $5.35 per hour for the last ten weeks. The trial court computed Switch's compensation rate based upon her hourly wage on the date of her injury—$5.35 per hour. On appeal, the Court of Appeals ruled that the compensation rate should be computed by *averaging* Switch's daily wages paid during the year preceding her injury. This Court granted the employee's petition for certiorari on December 16, 1993.

## ISSUE

■ The sole issue to be decided in this proceeding is whether the "average weekly wages" used in calculating an injured worker's compensation rate under 85 O.S. 1991 § 21 should be determined by averaging the daily wages paid to the worker during the year preceding her injury or should be based upon the worker's daily wage at the time of her injury. We hold that the average weekly wages are to be calculated based upon the daily wages of the worker at the time of her injury. Accordingly, we vacate the opinion of

the Court of Appeals and affirm the order of the Workers' Compensation Court.

## DISCUSSION

Title 85 O.S. 1991 § 21 provides the exclusive method for calculating a claimant's compensation rate. *Friendship Farmer's Co-Operative Gin v. Allred,* 196 Okla. 462, 165 P.2d 838, 848 (1945); *State Insurance Fund v. Smith,* 184 Okla. 552, 88 P.2d 895, 897 (1939). Section 21 provides in relevant part:

> Except as otherwise provided in this act, the average weekly wages of the injured employee *at the time of the injury* shall be taken as the basis upon which to compute compensation and shall be determined as follows:

> 1. If the injured employee shall have worked in the employment in which he was working at the time of the accident whether for the same employer or not, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed.

> \*  \*  \*  \*  \*  \*

> 4. The average weekly wages of an employee shall be one fifty-second ($\frac{1}{52}$) part of his average annual earnings.

(emphasis added).[1] Under this statutory scheme, a claimant's average weekly wages are computed by multiplying her average daily wage by 300 (subsection (1)) and dividing that amount by 52 (subsection (4)). *City of Norman v. Bowers,* 154 Okla. 200, 7 P.2d 482, 483–84 (1932). Before such a calculation can be made, however, the claimant's "average daily wage" must be determined.

The question presented in this case apparently has never been precisely addressed by this Court. Both the employer and the Court of Appeals relied upon *W.E. Shepherd & Son v. Hood,* 185 Okla. 635, 95 P.2d 619 (1939), for the proposition that respondent's wages in the year preceding her injury

---

1. This section was amended by Laws 1992, c. 294, § 6, eff. Sept. 1, 1992. Petitioner sustained her injury prior to the effective date of the amendment.

should be averaged to determine her average daily wage. In *Hood,* the claimant drove a truck for his employer three to five days per week and was paid a weekly salary which ranged from $14.00 to $18.00. This Court held that the claimant's average daily wage should be calculated by dividing the total sum paid him by the number of days during which he was employed. However, that ruling was based upon the fact that "there [was] no direct evidence as to how much [claimant's] salary amounted to per day." *Id.* 95 P.2d at 622. There is no such factual deficiency in the present case. The parties stipulated to the exact amount respondent earned per hour and to the average number of hours she worked per day at the time of her injury. The method of calculation utilized in *Hood* is inapplicable where, as here, there exists direct evidence of the claimant's average daily wages at the time of her injury.

■ The fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention and purpose of the Legislature as expressed in a statute. *Public Service Co. of Oklahoma v. State ex rel. Corp. Comm'n,* 842 P.2d 750, 752 (Okla. 1992). In construing a statute, "relevant provisions must be considered together, where possible, to give force and effect to each other." *Id.,* quoting *Ledbetter v. Oklahoma Alcoholic Bev. Laws Enforcement Comm'n,* 764 P.2d 172, 179 (Okla.1988). Furthermore, this Court has repeatedly held that workers' compensation laws must be liberally construed in favor of injured employees. *Special Indemnity Fund v. Treadwell,* 693 P.2d 608, 610 (Okla.1984); *Burger v. Lickliter,* 319 P.2d 594, 598 (Okla.1957); *In re Hughes,* 273 P.2d 450, 454 (Okla.1954); *Henly v. Oklahoma Union Ry. Co.,* 81 Okla. 224, 197 P. 488, 490 (1921).

The Court of Appeals based its decision upon a narrow construction of the language appearing at the end of 85 O.S. § 21(1). That language provides that a worker's average annual earnings shall consist of 300 times the "average daily wage or salary which he shall have earned in such employment during the days when so employed." The appellate court's restrictive interpretation—that average daily wages are computed by averaging

hourly wages paid during the year preceding injury—does not comport with the initial sentence of § 21 that refers to average weekly wages "at the time of the injury."

The appellate court's ruling also contravenes the purpose of the Workers' Compensation Act. This Court has held that the purpose of the Act is to compensate injured workers for loss of earning power and disability to work. *Special Indemnity Fund v. Treadwell,* 693 P.2d 608, 610 (Okla.1984); *Service Pipe Line Co. v. Cargill,* 289 P.2d 961, 962 (Okla.1955). In the present case, respondent lost an "earning power" of $5.35 per hour, the wage rate which she was then being paid, when she suffered her injury. To award her compensation based upon some other rate would defeat the purpose of the Act.

Examining other relevant provisions of the Act, we first note that the term "wages" has been statutorily defined as "the money rate at which the service rendered is recompensed under the contract of hiring in force *at the time of the injury . . . .*" 85 O.S. 1991 § 3(8) (emphasis added). *See also Knott v. Halliburton Services,* 752 P.2d 812, 813 (Okla.1988) (the right of an employee to compensation arises from the contractual relationship existing between the employee and the employer on the date of the injury). The contract in force at the time respondent was injured provided for compensation at the rate of $5.35 per hour.

In the context of the foregoing discussion, *M.T. Smith & Sons Drilling Co. v. Breed,* 146 Okla. 135, 294 P. 137 (1930), is instructional. In *Breed,* the claimant worked as a driller for his employer for three or four years, earning from $12.00 to $15.00 per day. Four days before he was injured, the claimant was temporarily put to work as a roughneck at $7.00 per day. The employer argued that the claimant's rate of compensation should be based upon the temporary daily wage of $7.00 claimant was earning at the time of his injury. This Court disagreed and held that the compensation rate should be based upon the amount the claimant ordinarily earned per day at his usual job and not upon the amount he earned while working in a temporary position:

We are of the opinion that the Legislature, in designating that the compensation in this class of case should be computed upon respondent's "average weekly wage" at the time of the injury, intended that the "average weekly wage" should be computed upon what the evidence shows to have in fact been the average weekly wage of the claimant at the time of the injury, and not upon the daily wage received by claimant while engaged in other business for his employer, when the evidence shows conclusively that respondent at that time was engaged in temporary work for a period of only a few days, which work was not the ordinary and usual work performed by respondent for petitioner, and which wage was not the ordinary and usual wage paid respondent by petitioner.

*Id.* 294 P. at 140. In the present case, respondent's ordinary and usual hourly wage for the work she ordinarily and usually performed for her employer was $5.35 per hour at the time of her injury.

We also find that subsection (3) of § 21 supports our conclusion that compensation rates must be based upon the daily wages of an employee at the time of her injury. Subsection (3) is used to calculate average annual earnings whenever such earnings cannot reasonably and fairly be determined under § 21(1) or (2). This subsection mandates that annual average earnings "shall reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time of the accident." *Earning capacity* is synonymous with the term *earning power*, while the phrase "employment ... at the time of the accident" necessarily implicates *wages* paid for such employment at that time. It is clear that compensation rates calculated under this subsection are to be based upon the wages earned by an injured worker at the time of her injury, which comports with the Act's purpose of compensating injured workers for their lost ability to earn future wages. We do not believe that the Legislature intended to treat disparately those injured employees

whose compensation rates are calculated under subsections (1) or (2).

### CONCLUSION

In calculating an injured worker's compensation rate under 85 O.S. 1991 § 21, the "average weekly wage" of the worker must be based upon the usual and ordinary hourly wage that the worker was earning at the time of her injury.[2] To base the compensation rate on some other figure would contravene the purpose of the Workers' Compensation Act and deny injured employees the benefit of merit or longevity raises, increases in federal minimum wage laws, or any other contingency that enhances a worker's earning ability. Accordingly, we hold that the trial court correctly calculated respondent's average daily wages and compensation rate based upon her hourly wage of $5.35 at the time of her injury.

Certiorari previously granted. The opinion of the Court of Appeals is vacated. The order of the Workers' Compensation Court is affirmed.

SIMMS, HARGRAVE, OPALA, ALMA WILSON and KAUGER, JJ., concur.

HODGES, C.J., LAVENDER, V.C.J., and SUMMERS, J., dissent.

---

**2.** Because the parties stipulated to the average number of hours worked per day by respondent, we need not here delineate the proper method for calculating the average number of hours worked per day by an injured employee.