1998 OK 82

**SAMSON HYDROCARBONS COMPANY,**
(formerly Grace Petroleum
Corporation), Appellant,

v.

**OKLAHOMA TAX COMMISSION,**
Appellee.

No. 89,989.

Supreme Court of Oklahoma.

July 14, 1998.

Timothy M. Larason & John F. Fischer, Andrews, Davis, Legg, Bixler, Milsten & Price, Oklahoma City, Oklahoma, for Appellant.

Thomas E. Kemp, Jr., General Counsel & Robert B. Struble, Deputy General Counsel, Oklahoma Tax Commission, Oklahoma City, Oklahoma, for Appellee.

## OPINION

WATT, J.:

### I. SUMMARY OF FACTS AND PROCEDURAL HISTORY

¶1 Grace Petroleum Corporation, a natural gas producer and the predecessor in interest of appellant Samson Hydrocarbons Company, was a party to numerous gas pur-

chase agreements with El Paso Natural Gas Company. The contracts covered oil and gas wells located in Oklahoma, New Mexico, Texas and Utah. The Oklahoma contracts required El Paso to take and pay for, or pay for if not purchased, certain minimum quantities of natural gas each year.[1] The payments for gas not taken under such take-or-pay contracts are commonly referred to as "take-or-pay deficiency payments." The deficiency payments at issue here—typically referred to as "recoupable, refundable" payments—were subject to recoupment in the form of future gas deliveries to El Paso or, if not recouped, cash refunds to El Paso. At some time prior to 1988, El Paso allegedly ceased making its deficiency payments under the contracts. Grace then made written claims against El Paso for the deficiency amounts plus interest. For the period from 1982 through September of 1988, Grace calculated the deficiency amounts on the Oklahoma properties at just over $16 million and the interest thereon at approximately $2.75 million.

¶ 2 On October 18, 1988, the parties entered into a settlement agreement whereby El Paso paid Grace a one-time nonrecoupable, nonrefundable payment of four million dollars. The settlement resulted in the cancellation of the gas purchase contracts and the release by each party of all claims or causes of action, with certain enumerated exceptions, which either party asserted or could have asserted for any period prior to October 1, 1988. Richard Metz, Grace's vice-president, testified that the company wanted the El Paso contracts terminated because El Paso was taking too little gas, which caused problems with adjoining wells draining gas from under Grace wells. According to Metz and Mark Haywood, another member of Grace's negotiating team, the interest to be earned on the $16 million accrued deficiencies was the only economic advantage Grace would receive from the deficiency payments because any deficiency payments would have been subject to recoupment or refund by El

Paso. Metz and Grace's comptroller, James Tyler, stated that the settlement was essentially the same as if El Paso had paid Grace the deficiency amount plus interest and then Grace had refunded the deficiency amount in order to cancel the contracts. A major item bargained for, according to Metz, was the time value of the deficiency payments that had not been made. The settlement agreement also called for Grace to hold El Paso harmless from all suits, actions and expenses arising from or out of any claim by any taxing authority.

¶ 3 Of the four million dollars in settlement proceeds, Grace allocated $2,693,495 to take-or-pay claims on Oklahoma wells. Grace recorded that amount on its books as interest income and reported that amount as interest income for tax purposes. Following an audit of both companies, the Business Tax Division of the Oklahoma Tax Commission issued a proposed assessment to El Paso for gross production taxes and gas excise taxes on the settlement amount allocated to Oklahoma take or pay claims. El Paso filed a protest and Grace intervened. After a hearing, an Administrative Law Judge for the Commission concluded that the $2.69 million figure was nontaxable interest and recommended that the protest be sustained. The Business Tax Division objected and requested oral argument before the Tax Commission en banc. The Commission rejected the ALJ's recommendation and held the settlement amount was taxable. Grace appealed and this Court retained the case for disposition on the merits.

## II. ISSUE

¶ 4 The issue in this case is whether the payment allocated by Grace as interest income is subject to gross production tax under 68·O.S. Supp.1987 § 1009(g) and gas excise tax under 68 O.S.1981 § 1102. We hold that

---

1. In a typical gas purchase contract, under a "take-or-pay" or "deficiency" clause, a gas purchaser is obligated to take and pay for, or pay for whether or not taken, a specific volume of gas during specific time periods. The clause apportions the risk of natural gas production and sales between the buyer and seller, with the seller bearing the risks of production and the buyer bearing the risks of market demand. Brown and McGregor, *Fallout From the Take–or–Pay Wars: Gross Production Tax on Proceeds Received in Settlement of Take–or–Pay Litigation*, 43 Okla. L.Rev. 457 n. 2 (1990).

it is not and reverse the order of the Tax Commission.

## III. DISCUSSION

### A. STANDARD OF REVIEW

¶5 In *Dugger v. State ex rel. Okla. Tax Comm'n,* 1992 OK 105, ¶9, 834 P.2d 964, 968, this Court held:

> The appellate courts will review the entire record made before an administrative agency acting in its adjudicatory capacity to determine whether the findings and conclusions set forth in the agency order are supported by substantial evidence. An adjudicatory order will be affirmed on appeal if the record contains substantial evidence in support of the facts upon which the decision is based and the order is otherwise free of error.

(footnotes omitted). For the reasons stated below, we find that the Commission's order is not supported by substantial evidence.

### B. SECTION 1009(g), SECTION 1102 AND THE RULES OF STATUTORY CONSTRUCTION

¶6 In Oklahoma, a tax of 7% is levied on the gross value of the production of natural gas. 68 O.S.1991 § 1001(b). Regarding "take-or-pay" settlements, 68 O.S. Supp.1987 § 1009(g) states:

> Pursuant to the provisions of a gas purchase contract or agreement, if the first purchaser makes payments to the producer as a result of the failure or refusal of said purchaser to take gas, said payments, for purposes of this article, are hereby deemed to be part of the gross value of gas taken according to said contract or agree-

ment. The gross production tax shall be calculated upon the gross value, including said payments, in accordance with the provisions of this article. Gas on which the gross production tax has been paid in this manner when taken by said purchaser shall be reported as gas on which said tax has been paid. If said gas, which corresponds to such payments, is not taken but payments therefor are retained by the producer, then said payments are hereby deemed to be a premium on gas which was taken under said contract or agreement.[2]

Gas excise taxes under 68 O.S.1981 § 1102 are collected "in the same manner as is provided by law for the collection of gross production tax[es] ... and apply in all cases where the gross production tax ... applies...."[3] Thus, the question of whether gas excise taxes are due hinges entirely upon whether gross production taxes are due under § 1009(g).

■ ¶7 The fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention and purpose of the Legislature as expressed in a statute. *Wal–Mart Stores, Inc. v. Switch,* 1994 OK 59, ¶5, 878 P.2d 357, 359. In the absence of a contrary definition, words in a statute "are to be given the same meaning as that attributed to them by ordinary and common definitions." *Anson Corp. v. Hill,* 1992 OK 138, ¶10, 841 P.2d 583, 585. *See also* 25 O.S.1991 § 1. We employ the presumption "that every provision of our statutes has been intended for some useful purpose and should be given effect." *Hunt v. Washington Fire & Marine Ins. Co.,* 1963 OK 112, ¶11, 381 P.2d 844, 847.

2. The 1987 version of § 1009(g) was the provision in effect at the time of the tax assessments at issue. Although § 1009 was amended by Laws 1992, c. 30, § 7. emerg. eff. March 31, 1992, subsection (g) remains unchanged.

3. Section 1102 states in relevant part:
> There is hereby levied, in addition to the gross production tax, an excise tax equal to eighty-five one thousandths of one percent (.085 of 1%) of the gross value of all natural gas and/or casinghead gas produced in the State of Oklahoma which is subject to gross production tax in the State of Oklahoma. Such excise tax of eighty-five one thousandths

of one percent (.085 of 1%) of the gross value shall be reported to and collected by the Tax Commission at the same time and in the same manner as is provided by law for the collection of gross production tax on natural gas and/or casinghead gas, and this excise tax shall apply in all cases where the gross production tax provided for by law applies to the production of natural gas and/or casinghead gas....

This section was amended by Laws 1995, c. 328, § 100, eff. July 1, 1995, to provide for a tax of ninety-five one thousandths of one percent (.095 of 1%).

¶8 It is also firmly established that tax statutes must be strictly construed against the state. *Strelecki v. Okla. Tax Comm'n,* 1993 OK 122, ¶ 20, 872 P.2d 910, 920; *Wilson v. State ex rel. Okla. Tax Comm'n,* 1979 OK 62, ¶ 5, 594 P.2d 1210, 1212. Any ambiguity or doubt as to a tax statute's meaning must be resolved in favor of the taxpayer. *Strelecki,* 1993 OK 122, ¶ 20, 872 P.2d at 920; *Wilson,* 1979 OK 62, ¶ 5, 594 P.2d at 1212; *Globe Life & Accident Ins. Co. v. Okla. Tax Comm'n,* 1996 OK 39, ¶ 10, 913 P.2d 1322, 1327. "[C]ourts cannot enlarge the taxing act's ambit to make its provisions applicable to cases not clearly within the Legislature's contemplation or to fill [gaps] in the revenue law in a manner that would distort the enactment's plain language." *Globe Life,* 1996 OK 39, ¶ 10, 913 P.2d at 1327.

### C. HISTORY OF GROSS PRODUCTION TAXES AND DEFINITION OF "PRODUCTION"

¶ 9 Historically, gross production taxes in Oklahoma have been levied only upon natural gas that has actually been "produced." As was stated in *In re Gross Production Tax of Wolverine Oil Co.,* 1915 OK ——, 53 Okla. 24, 154 P. 362, 365, "If there be no production, ... no tax is authorized." Natural gas has been considered "produced" for gross production tax purposes when brought to the surface and confined in such a manner as to permit its measurement as to quantity and testing as to quality. *Oklahoma Tax Comm'n v. Sun Oil Co.,* 1971 OK 100, ¶ 10, 489 P.2d 1078, 1081. This definition of production is in accord with the well settled principles that natural gas in the ground is taxed as real property, *Cornelius v. Jackson,* 1948 OK ——, 201 Okla. 667, 209 P.2d 166, 171; *Secrest v. Williams,* 1939 OK ——, 185 Okla. 449, 94 P.2d 252, 253, while gas reduced to possession by being detached from the ground is subject to gross production tax. *Carpenter v. Shaw,* 1929 OK ——, 134 Okla. 29, 272 P. 393, 397, *rev'd on other grounds* 280 U.S. 363, 50 S.Ct. 121, 74 L.Ed. 478 (1930). *See also Keystone Pipe & Supply Co. v. Crabtree,* 1935 OK ——, 174 Okla. 562, 50 P.2d 1086, 1088. The Gross Production Tax Code specifically provides that gross production taxes are "in lieu of" ad valorem taxes. 68 O.S. Supp.1992 § 1001(q) & (r).[4] *See also Apache Gas Products Corp. v. Okla. Tax Comm'n,* 1973 OK 34, ¶ 18, 509 P.2d 109, 113–114.[5]

¶ 10 The term "production" was also addressed by this Court in *Roye Realty & Developing, Inc. v. Watson,* 1996 OK 93, 949 P.2d 1208. There, royalty owners sought royalties from the proceeds of a take-or-pay settlement entered into between a gas purchaser and producer. The leases in question provided for royalties to be paid on gas "produced and sold" or "produced, saved and sold." We held that, absent clear language to the contrary in the lease, a royalty owner is not entitled to share in take-or-pay settlements. Our decision was based in large part on a strict interpretation of the word "produced" as meaning "not only discovery of the product, but also *extracting it from the ground."* *Id.* at ¶ 33, 949 P.2d at 1216, citing *Walden v. Potts,* 1944 OK ——, 194 Okla. 453, 152 P.2d 923 (emphasis added).

¶ 11 The *Roye* decision cited with approval three other courts' definitions of the word

---

4. The versions of subsections (q) and (r) in effect at the time of the assessments here were 68 O.S. Supp.1987 § 1001(h) & (i). The relevant text of both versions is substantially the same.

5. *In re Gross Production Tax of Wolverine Oil Co., supra,* was overruled in *In re Skelton Lead & Zinc Company's Gross Production Tax for 1919,* 1921 OK ——, 81 Okla. 134, 197 P. 495, 498, which held that the gross production tax was a property tax. In *Apache Gas,* this Court specifically recognized that *Wolverine Oil,* not *In re Skelton,* accurately stated Oklahoma law:

> Despite what has been said in some past decisions, the gross production tax is *not* a property tax. By express terms, it is a tax "in lieu of" property taxes by the State and its subdivisions upon various kinds of property rights, real and personal, in connection with the exercise of mining rights, and upon the gas itself during the tax year in which produced.

*Apache Gas,* 1973 OK 34, ¶ 18, 509 P.2d at 113–114 (emphasis in original). *Wolverine Oil* was cited as the prime example of an "early decision[] of this Court [which] correctly recognized the tax not to be a property tax but an excise, in lieu of property, and certain other, taxes." *Apache Gas,* 1973 OK 34, ¶ 18, 509 P.2d at 114.

"production." *Killiam Oil Co. v. Bruni*, 806 S.W.2d 264, 267 (Tex.Ct.App.1991), defined production as "the actual physical extraction of the mineral from the soil;" *State v. Pennzoil*, 752 P.2d 975, 979 (Wyo.1988), held that "'[p]roduction' requires severance of the mineral from the ground;" and *Diamond Shamrock Exploration Co. v. Hodel*, 853 F.2d 1159, 1165 (5th Cir.1988), stated that production means "the severance of minerals from the formation." *See Roye*, 1996 OK 93, ¶¶ 9–11, 949 P.2d at 1212. A number of other jurisdictions have similarly defined the term. *See, e.g., Saturn Oil & Gas Co. v. Fed. Power Comm'n*, 250 F.2d 61, 64 (10th Cir.1957), *cert. denied* 355 U.S. 956, 78 S.Ct. 542, 2 L.Ed.2d 532 (1958) ("Production of gas is the act of bringing forth gas from the earth"); *Energy Oils, Inc. v. Montana Power Co.*, 626 F.2d 731, 738 (9th Cir.1980) ("'Production,' as used ... in the oil and gas industry, refers to oil and gas actually severed from the ground"); *Mesa Petroleum Co. v. U.S. Dept. of Interior*, 647 F.Supp. 1350, 1354 (W.D.La.1986) (same); *Christian v. A.A. Oil Corp.*, 161 Mont. 420, 506 P.2d 1369, 1373 (1973) (Production requires that "oil and gas must be withdrawn from the land and reduced to possession").

¶ 12 The decisions in *Roye, Killiam Oil, Pennzoil* and *Hodel* all teach that a take-or-pay settlement does not trigger the royalty provision of a gas lease that delineates "production" as a prerequisite for the payment of royalties. The rationale of those decisions also support the conclusion that, in the absence of § 1009(g), a take-or-pay settlement would not trigger the provisions of the Gross Production Tax Code. In the *Pennzoil* case, the royalty owner sought royalty on a recoupable take-or-pay payment made pursuant to a gas contract. The royalty provision stated that royalties were to be paid on gas "produced ... saved and sold or used off the premises." Based in part on its strict interpretation of the word "produced," the court concluded that "there has been no production and sale of this gas to trigger the requirement to pay royalties." *Pennzoil*, 752 P.2d at 982. The same can be said concerning gross production taxes. Because a take-or-pay settlement does not fall within Oklahoma's definition of "production," such a set-

tlement would not—in the absence of § 1009(g)—trigger the requirement to pay gross production taxes.

¶ 13 *Killiam Oil* and *Hodel* further support this conclusion. In *Killiam Oil*, the court stated that "under a standard lease, take-or-pay payments do not constitute any part of the price paid for produced gas, nor do they have the effect of increasing the price paid for the gas that was taken." *Killiam Oil*, 806 S.W.2d at 268. As the *Hodel* opinion explained, "Take-or-pay payments are intended to compensate primarily the producer ... for the risks associated with development production." *Hodel*, 853 F.2d at 1167.

> While the take-or-pay obligation is intended to compensate the producer for the exclusive commitment of reserves to a gas sales contract, this does not automatically mean that the take-or-pay obligation is part of the value of the gas. A take-or-pay payment which comes before gas is actually produced and taken simply cannot be a payment for a sale of gas.

*Id.* (footnote omitted). *Accord Kaiser–Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 570 (10th Cir.1989).

¶ 14 Following the rationale of *Killiam Oil* and *Hodel*, we agree that classic "take-or-pay" settlements are intended primarily to compensate the producers for production risks and for the exclusive commitment of reserves to a gas sales contract. They do not constitute any part of the price paid for *produced* gas. As the *Hodel* court stated, "With no production there is nothing to value either by market or otherwise." *Hodel*, 853 F.2d at 1167. It is axiomatic that if something cannot be valued it cannot be subjected to taxation.

## D. OTHER RELATED STATUTORY PROVISIONS

¶ 15 In addition to the decisions discussed above, several other provisions of the Gross Production Tax Code are instructive. When construing statutes, we must consider relevant portions together, where possible, to give force and effect to each statute. *Ledbet-*

ter v. Okla. Alcoholic Bev. Laws Enforcement Comm'n, 1988 OK 117, ¶ 7, 764 P.2d 172, 179. In *Prettyman v. Halliburton Co.*, 1992 OK 63, 841 P.2d 573, we explained:

> In the construction of statutes it is axiomatic that the statute as amended is to be construed as a consistent whole, in harmony with common sense and reason and that every part should be given effect; that amendments are to be construed together with the original act to which they relate as constituting one law and also together with other statutes on the same subject as part of a coherent system of legislation.
>
> Antecedent legislative enactments may be considered in the construction of amendatory acts *in pari materia*. Words and phrases employed in the original or antecedent act will be presumed to be used in the same sense in the amendatory enactment. The original section as amended and the unaltered sections of an Act relating to the same subject matter are to be considered together. When ascertaining legislative intent the Court must presume that when adopting the amendment, the legislature had knowledge of the law as it previously existed and had in mind the judicial construction which had been placed on that law.

*Id.* at ¶¶ 20–21, 841 P.2d at 580 (citations omitted).

¶ 16   Title 68 O.S. § 1001 imposes gross production taxes on "the gross value of the production of gas." Section 1001.1(2) states that the tax levied by § 1001 is "on production during the calendar year immediately prior to January 1 of the year for which the assessment or valuation is made...." Section 1009(b) requires that the tax be paid "on the first day of each calendar month ... from which ... natural gas [is] produced in and saved during the preceding monthly period...." These provisions clearly illustrate a legislative intent that gross production taxes generally be levied only upon natural gas *actually produced*.

## E.   CONSTRUCTION OF SECTION 1009(g) AND SECTION 1102

■ ¶ 17   With the historical treatment of gross production taxes and the statutory purpose of the Code as a backdrop, and guided by the rules of statutory construction, we conclude that the payment at issue is not subject to gross production or gas excise taxes. It is apparent that with the enactment of § 1009(g) in 1983, the Legislature carved out a limited exception to the established policy of imposing taxes only upon natural gas actually produced. Subsection (g) states that gross production taxes are due on any payments made by the first purchaser to the producer as a result of the failure or refusal of the producer to take gas pursuant to the provisions of a gas purchase contract or agreement. This provision clearly applies to (1) a classic take-or-pay deficiency settlement where a purchaser pays a producer for failing or electing not to take the minimum quantity of gas required by contract, or (2) a payment made in satisfaction of a judgment emanating from a take-or-pay deficiency lawsuit. Both of these examples are associated with past production quotas required by contract, which, we believe, is what § 1009(g) was designed to embrace.

■ ¶ 18   Consistent with this reasoning, we conclude that the intent of § 1009(g)—with respect to take-or-pay settlements—is to facilitate the collection of those gross production taxes that would have been levied on the actual production and sale of natural gas under a gas purchase contract had the purchaser taken delivery of the minimum quantity of gas specified by the contract's take-or-pay provision. As an exception to the rule that gross production taxes are generally levied only upon actual production, § 1009(g) must be narrowly interpreted to cover only those take-or-pay deficiency payments that are clearly identifiable as having been made "as a result of the failure or refusal of [the] purchaser to take gas" pursuant to a gas purchase contract.[6] ~~In this respect, the Tax Commission bears the burden under § 1009(g) of proving that such a payment does not represent interest income or an~~

---

**6.**   *See Globe Life & Accident Ins. Co. v. Okla. Tax Comm'n, supra, Strelecki v. Okla. Tax Comm'n,* *supra,* and *Wilson v. State ex rel. Okla. Tax Comm'n, supra.*

amount paid in consideration for the termination of a gas purchase contract. The Gross Production Tax Code was designed to levy a tax upon either natural gas actually produced or payments made in lieu of actual production. Section 1009(g) covers the latter example. An amount representing foregone interest on take-or-pay deficiency claims is neither a payment for gas actually produced nor a payment made in lieu of actual production.

## F. APPLICATION OF LAW TO PRESENT FACTS

¶ 19 It is undisputed that the underlying claim in this case was one by Grace against El Paso for alleged take-or-pay deficiencies *plus accrued interest thereon.* Grace made written demands for interest as well as deficiency amounts. Testimony disclosed that Grace did not want to receive any recoupable and refundable deficiency payments, but wanted instead to receive only the accrued interest and cancellation of the gas purchase contracts. The settlement amount attributed to interest is almost exactly equal to the amount of interest Grace had computed and bears no resemblance to the deficiency claim of over $16 million. Grace recorded the settlement payment on its books as interest income and reported it in that manner for income tax purposes.

¶ 20 The Commission's decision was based in part upon the failure of the settlement agreement to allocate any amount of the settlement proceeds to interest. We note, however, that the settlement agreement did not provide for *any* allocation of the proceeds. The agreement also never mentioned take-or-pay deficiency claims specifically, only "claims or causes of action ... arising in any way out of or under the [Gas Purchase] Agreements...." [7] Because the evidence indicated that Grace's claims were composed of two parts—the deficiency amounts and the accrued interest—the fact that the settlement agreement resolved the dispute does not indicate one way or the other whether the payment was for deficiency or interest. By contrast, the evidence was uncontroverted that if the deficiency amounts had been recovered, such amounts would have been subject to recoupment. The interest claims would not have been subject to recoupment. The settlement agreement specified that none of the cash payment would be subject to recoupment.[8] Thus, the settlement agreement would not support any allocation to deficiency, but only an allocation to interest. The record simply does not support the Commission's ruling that the $2.69 million portion of the settlement is taxable under § 1009(g) as a take-or-pay deficiency payment.

## IV. CONCLUSION

¶ 21 "Production," as used in the oil and gas industry, refers to the extraction of minerals from the ground. Gross production taxes have historically been levied only upon natural gas that has actually been "produced," as demonstrated by both case law and the general provisions of the Gross Production Tax Code. Section 1009(g) is a limited exception to the established policy that gross production taxes be imposed only upon past production. As an exception to the general rule, it must be narrowly interpreted to cover only those take-or-pay deficiency payments that are clearly identifiable as such. As a tax statute, it must be strictly interpreted against the state.

¶ 22 Consistent with these directives, we hold that a payment made by a gas purchaser to a producer for accrued interest on take-or-pay deficiency claims is not subject to gross production taxes under § 1009(g). In the present case, the evidence clearly indicates that the $2.69 million figure was appropriately allocated as interest income. The Tax Commission's finding to the contrary is

---

7. There are a myriad of reasons why parties settle disputes; one does not *ipso facto* admit liability by entering into a settlement agreement. "The compromise and settlement of a claim or cause of action is not an admission that the claim is valid, but merely admits that there is a dispute, and that an amount is paid to be rid of the controversy...." *Smith v. Williamson,* 1953 OK ——, 208 Okla. 323, 256 P.2d 174, 181, quoting 15 C.J.S. Compromise and Settlement § 22.

8. The settlement agreement provided, "This payment shall be unconditional, irrevocable, nonrefundable and non recoupable from Seller."

not supported by substantial evidence. The figure represents neither compensation for gas actually produced nor a payment made in lieu of actual production. Accordingly, gross production taxes on that amount is not due under § 1009(g). Gas excise taxes under § 1102, payable only where gross production taxes apply, are also not due on that amount.

THE ORDER OF THE TAX COMMISSION IS REVERSED.

¶ 23  HODGES, LAVENDER, SIMMS, HARGRAVE, and WATT, JJ.—concur.

¶ 24  KAUGER, C.J.—concurs in result.

¶ 25  SUMMERS, V.C.J. and WILSON, J.—concur in part, dissent in part.

¶ 26  OPALA, J.—not participating.

