2002 OK CIV APP 99

**William E. WILLOUGHBY, Petitioner,**

v.

**TIDELANDS GEOPHYSICAL CO., INC., CGU Insurance, and the Workers' Compensation Court, Respondents.**

**No. 96,553.**

Court of Civil Appeals of Oklahoma, Division No. 2.

May 14, 2002.

Certiorari Denied Sept. 9, 2002.

Joe Farnan, Purcell, for Petitioner.

R. Dale Kimsey, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for Respondents.

TOM COLBERT, Presiding J.

¶ 1 Claimant, William E. Willoughby, seeks this court's review of an order of the workers' compensation trial court granting him temporary total disability benefits. The issue on review is whether the court erred in setting Claimant's compensation rate. We conclude that it did err, vacate the order, and remand for the entry of an order in accord with this opinion.

¶ 2 Claimant was injured on December 21, 2000, while working for Employer, Tidelands Geophysical Co., Inc. On June 22, 2001, the workers' compensation trial court determined that Claimant was temporarily totally disabled [TTD]. Although Claimant introduced evidence to support a weekly compensation rate of $441, the court awarded a weekly rate of $334.41. Claimant seeks this court's review.

## STANDARD OF REVIEW

¶ 3 The only issue presented for our review is whether the trial court correctly applied 85 O.S. Supp.2000 § 21(1) to calculate Claimant's weekly wage rate. This presents a question of law which we review *de novo*. *Dep't of Human Servs. v. Rogers*, 1998 OK CIV APP 46, ¶ 1, 958 P.2d 806, 807.

## DISCUSSION

¶ 4 There is no dispute that the trial court properly determined Claimant to be TTD due to a back injury he suffered while working for Employer. Moreover, there is no dispute as to Claimant's hourly wage or the total wages he received during the months before and after his injury. The issue in dispute is the proper way to apply those figures to the calculation of Claimant's compensation rate. The compensation rate for TTD is 70% of an employee's average weekly wages. 85 O.S. Supp.2000 § 22(2)(b). Under these circumstances, the average weekly wages are calculated by multiplying the average daily wage by 260 and dividing the result by 52. 85 O.S. Supp.2000 § 21.[1]

¶ 5 Claimant worked as a driller for Employer, a seismograph company. He testified he was paid $9.00 per hour and worked an eight-hour day, when there was work to be done and weather permitted. He also testified that, if he met the production goal for the shift, he was paid for an additional four hours at time and a half, or $13.50 per hour.

---

1. The pertinent portion of section 21 reads:

    1. If the injured employee shall have worked in the employment in which he was working at the time of the accident whether for the same employer or not, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of two hundred sixty times the average daily wage or salary which he shall have earned in such employment during the days when so employed.

    \* \* \*

    4. The average weekly wages of an employee shall be one fifty-second (⅟₅₂) part of his average annual earnings.

    85 O.S. Supp.2000 § 21. Although section 21 provides alternative methods for calculating average weekly wages, both parties agree that these are the applicable subsections. Sections 21 and 22(2)(b) remain the same. *See* 85 O.S.2001 §§ 21, 22(2)(b).

Claimant testified that, when he worked, he always made his goal. This resulted in average daily pay of $126, average weekly pay of $630, and a weekly compensation rate of $441.

¶ 6 Claimant also testified, however, that there were days when he did not work and was not paid because of inclement weather or lack of projects. In particular, he testified that he was laid off for approximately five weeks during the fall. He sought no other work or unemployment benefits because Employer continued to tell him he would be back to work within a few days. When he reported, but could not actually work due to weather conditions or lack of projects, Claimant was paid two hours of "show-up" pay. Claimant admitted he did not receive overtime incentive when he and the other workers were moving the rigs from one drilling location to another and when he received "show-up" pay only.

¶ 7 Employer introduced biweekly pay records for Claimant's period of employment from April 2000 to December 2000. These records reflected, in two week periods, Claimant's total regular and overtime hours and his gross pay. They did not identify the days when Claimant was not allowed to work due to weather or lack of projects. Claimant's attorney did not dispute that the pay records were an accurate reflection of Claimant's actual earnings, but stated:

I do have a problem with them in that I don't think they're very probative of the issue because they don't show what the average daily [wage] is. They just show two week periods at a time.

¶ 8 The trial court, relying on the pay records, averaged Claimant's total gross pay of $17,676 over a period of 37 weeks, to reach an average weekly wage of $477.73. The court used that figure to calculate Claimant's compensation rate of $334.41 (70% of $477.73). Claimant contends the trial court should have relied upon his testimony to reach a weekly compensation rate of $441 (70% of $630).

¶ 9 Section 21 provides that a claimant's compensation rate should be calculated based on his wages "earned in such employment *during the days when so employed.*" § 21(1) (emphasis added). "[T]he purpose of the [Workers' Compensation] Act is to compensate injured workers for loss of *earning power* and disability to work." *Wal-Mart Stores, Inc. v. Switch,* 1994 OK 59, ¶ 7, 878 P.2d 357, 359 (emphasis added). In *Switch,* the Oklahoma Supreme Court held that the workers' compensation court must calculate a claimant's average weekly wages based on his or her daily wages at the time of injury, not on the average of the claimant's daily wages over the year preceding the injury. *Id.* at ¶ 2, 878 P.2d at 358. The Court explained:

[T]he "average weekly wage" of the worker must be based upon the usual and ordinary wage that the worker was earning at the time of her injury. To base the compensation rate on some other figure would contravene the purpose of the Workers' Compensation Act and deny injured employees the benefit of merit or longevity raises, increases in federal minimum wage laws, or *any other contingency that enhances a worker's earning ability.*

*Id.* at ¶ 11, 878 P.2d at 360 (footnote omitted) (emphasis added). "Rather than using Claimant's **actual** past **earnings** as the basis from which to determine his 'average weekly wages' the trial court must use his actual wage or salary." *Dep't of Human Servs. v. Rogers,* 1998 OK CIV APP 46, ¶ 6, 958 P.2d 806, 808. In *Rogers,* the trial court could not rely on the claimant's actual past earnings because he missed work during the previous year for three surgeries unrelated to his employment. This is not unlike the time missed by Claimant here due to weather and lack of projects. Employer's evidence, then, was not directly probative of Claimant's average daily wage, because it reflected, but did not identify, periods of inactivity when Claimant was paid little or nothing.

¶ 10 Employer asserts, nevertheless, that its biweekly payroll records impeached Claimant's testimony, because they show several two-week periods where Claimant was paid for 80 hours of regular time, but was not paid for 40 hours of overtime. Employer's argument is flawed for several reasons. First, it assumes that Claimant worked a

regular five-day work-week, which would result, under normal conditions, in 80 hours of regular time every two weeks. Claimant testified, however, without contradiction, that "[o]ur weeks run seven day weeks. We don't have just a basic five day week." Therefore, an 80–hour pay period does not necessarily represent two weeks of five days per week and eight hours per day. Second, Claimant testified that there were times when he was not paid overtime, such as when they were moving rigs or when Employer paid for "show-up" time on rainy days. Employer, however, did not introduce any evidence to establish how much of this kind of time was included in its payroll records.

¶ 11 Third, Employer's biweekly payroll records more than demonstrate the essential truth of Claimant's description of his pay arrangement. In the ten pay periods where Claimant was paid for 80 regular hours, he was paid overtime ranging from 28 to 85 hours; for the total 800 hours of regular time (accrued during 80–hour periods), Claimant was paid for 509.5 overtime hours. Moreover, for the entire period, Claimant was paid for 1388 regular hours and 739.5 overtime hours, well more than half of his regular hours.

¶ 12 In short, Claimant's testimony was the only evidence presented to the trial court from which it could compute his average daily wage for the days he actually worked. While his actual daily rate may have been less, taking into account the days spent moving the rigs, Employer introduced no evidence to correct Claimant's testimony on that issue. The evidence it did present was not probative of the issue, because it reflects periods of inactivity which cannot be taken into account in calculating Claimant's compensation rate.

¶ 13 This is one of those rare circumstances where the trial court could not disregard a witness's testimony. A court cannot "arbitrarily discredit and disregard unimpeached competent and relevant testimony that is uncontradicted." *C.f. Wright & Edwards v. Okla. Employment Sec. Comm'n,* 1997 OK 163, 934 P.2d 1088, 1092. Contrary to Employer's assertion, Claimant's testimony was not impeached or contradicted by any evidence; it contained no inherent probabilities or contradictions. *See Bittman v. Boardman Co.,* 1977 OK 32, ¶ 4, 560 P.2d 967, 969. While the workers' compensation court "is the sole arbiter of credibility of witnesses and the weight accorded their testimony," *Mitchell v. LePak Trucking Co.,* 1977 OK 44, ¶ 3, 561 P.2d 967, 969, when such testimony is "unimpeached by other direct or circumstantial evidence, is consistent within itself and is not inherently improbable . . . it is impermissible for the fact finder to ignore it." *Chester v. Okla. Natural Gas Co.,* 1980 OK CIV APP 5, ¶ 4, 619 P.2d 1266, 1267. Claimant's testimony provided the only competent evidence of his average daily wage and the trial court impermissibly ignored that evidence.

¶ 14 The workers' compensation trial court erred in setting Claimant's TTD compensation rate at $334.41 per week. On remand, the court shall enter an order setting Claimant's TTD compensation rate at $441.

¶ 15 VACATED AND REMANDED.

RAPP, J., and GOODMAN, J., concur.