2003 OK CIV APP 53

Kent MEDCALF, D.O.,
Plaintiff/Appellant,

v.

Ronald COLEMAN, M.D.; Bruce Switzer; Broken Arrow Medical Center; Medical Executive Committee, Broken Arrow Medical Center, Inc.; Board of Directors, Broken Arrow Medical Center; and Saint Francis Hospital, Defendants/Appellees,

and

Leon Yoder, D.O.; Mark Mathers, D.O.; Bryan Lucenta, M.D.; Thomas Costner, D.O.; Carolyn Pimsler, D.O.; John Jennings, M.D.; and Harley Galusha, D.O., Defendants.

No. 98,906.

Court of Civil Appeals of Oklahoma, Division No. 2.

May 13, 2003.

Charles L. Richardson, Mark L. Collier, Stephanie Dinsmore Phipps, Richardson, Stoops, Richardson & Ward, Tulsa, OK, for Plaintiff/Appellant.

Michael Barkley, F. Will DeMier, Elizabeth A. Ballard, Barkley, Titus, Hillis &

Reynolds, Tulsa, OK, for Defendants/Appellees.

Opinion by TOM COLBERT, Vice Chief Judge:

¶ 1 Appellant, Kent Medcalf, D.O., appeals an order of the trial court refusing to reconsider a summary adjudication in favor of Appellees, Ronald Coleman, M.D.; Bruce Switzer; the Broken Arrow Medical Center, Inc. (BAMC); the Medical Executive Committee of BAMC; the Board of Directors of BAMC; and Saint Francis Hospital. The dispositive issue on appeal is one of law: whether the trial court had jurisdiction to decide Medcalf's claims. We hold it did not and affirm the court's order.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Medcalf, an ophthalmologist, began practicing at BAMC, a private, non-profit hospital,[1] in April 1993. On April 22, 1994, Medcalf received a letter from BAMC informing him that his clinical privileges at the hospital were being summarily suspended. He later learned the suspension resulted from an incident on April 20, 1994, when, shortly before performing two cataract surgeries, Medcalf took a medication which caused an adverse reaction. He stated he believed the medication was Propanolol, a drug commonly taken by surgeons to control "normal physiologic microscopic movements."[2]

¶ 3 On April 24, 1994, the Medical Executive Committee reviewed the suspension and recommended that it be upheld. The Board of Directors ultimately revoked Medcalf's staff privileges. Medcalf received a hearing before a Fair Hearing Panel, which recommended that he be reinstated, but the Board of Directors upheld the revocation.

¶ 4 Medcalf filed suit against BAMC on April 1, 1996. On August 14, 1997, he filed a second amended petition, naming as defendants Ronald Coleman, M.D.; Thomas Costner, D.O.; Carolyn Pimsler, D.O.; Leon Yoder, D.O.; John Jennings, M.D.; Bruce Switzer; Bryan Lucenta, M.D.; and Mark Mathers, D.O.; who were members of the Medical Executive Committee of BAMC; Harley Galusha, D.O.; BAMC; the Medical Executive Committee of BAMC; the Board of Directors of BAMC; and Saint Francis Hospital, of which BAMC is an affiliate. The petition alleged wrongful termination, malicious interference with contract, breach of duty of procedural fairness, intentional infliction of emotional distress, and breach of confidentiality. Medcalf sought both injunctive relief and money damages.

¶ 5 In December 1999, Medcalf dismissed Drs. Yoder, Mathers, and Lucenta from the suit. In January 2000, he dismissed Drs. Costner and Pimsler. On October 16, 2002, the remaining defendants filed a motion for partial summary adjudication, arguing that, pursuant to *Ponca City Hospital, Inc., v. Murphree,* 1976 OK 4, 545 P.2d 738, Oklahoma courts do not have jurisdiction to review staffing decisions made by private, non-profit hospitals. The motion was partial because it did not include Medcalf's claim of breach of confidentiality against Drs. Galusha and Jennings. On November 12, 2002, Medcalf dismissed his claim for injunctive relief and argued that the court could assert jurisdiction because his claim was only for money damages.

¶ 6 On December 19, 2002, the trial court granted the motion for partial summary judgment. On January 16, 2003, Medcalf dismissed Drs. Galusha and Jennings from the suit, leaving as defendants Dr. Coleman, Switzer, BAMC, the Medical Executive Committee of BAMC, the Board of Directors of BAMC, and Saint Francis Hospital.[3] Med-

---

1. The record contains a Certificate of Incorporation, filed with the Oklahoma Secretary of State on January 21, 1985, showing that Broken Arrow Medical Center, Inc., was established as a non-profit corporation.

2. Medcalf stated the patients did not suffer any injuries as a result of the surgical procedures, and Appellees never alleged the patients suffered injuries.

3. Although Appellees termed their motion one for "partial summary adjudication," the correct phrase is "interlocutory summary adjudication." *See Reams v. Tulsa Cable Tel., Inc.,* 1979 OK 171, ¶ 5, 604 P.2d 373, 376. Medcalf's dismissal of Drs. Galusha and Jennings made the interlocutory summary adjudication entered by the trial court a final judgment.

calf filed a motion to reconsider which the trial court denied on January 29, 2003. Medcalf now appeals to this Court.

## STANDARDS OF REVIEW

¶ 7 Questions concerning a trial court's jurisdictional power invoke the the de novo standard of review. *Jackson v. Jackson*, 2002 OK 25, ¶ 2, 45 P.3d 418, 422. Under this standard, we have "plenary, independent and non-deferential" authority to examine a trial court's legal rulings. *Id.*

¶ 8 Medcalf's motion to reconsider was the functional equivalent of a motion for new trial. The standard of review of a trial court's decision on a motion for new trial is abuse of discretion. *Strubhart v. Perry Mem'l Hosp. Trust Auth.*, 1995 OK 10, ¶ 16, 903 P.2d 263, 269. Our decision regarding the jurisdictional issue will determine whether the trial court abused its discretion in denying the motion to reconsider.

## DISCUSSION

¶ 9 The issue of jurisdiction is fundamental and may be raised at any time. *Graves Dairy Farm v. Evans*, 2000 OK CIV APP 3, ¶ 11, 997 P.2d 173, 175 (citing *Hawkins v. Hurst*, 1970 OK 56, 467 P.2d 159, 160 (syl. no. 1 by the Court)). We agree with Appellees that this matter is controlled by *Ponca City Hospital, Inc. v. Murphree*, 1976 OK 4, 545 P.2d 738.

¶ 10 The issue in *Murphree* was "whether the action of a private hospital in revoking staff privileges of a physician is subject to judicial review." *Id.* at ¶ 1, 545 P.2d at 738. The plaintiff had been a physician in the radiology department of the hospital for nearly twenty years when the hospital's board of trustees revoked his staff privileges because of alleged disruptive activities and the difficulty which radiology personnel experienced in working with him. The plaintiff sued the hospital, seeking both a temporary and a permanent injunction. The trial court asserted jurisdiction and issued the injunctions. The hospital appealed to the Oklahoma Supreme Court.

¶ 11 The plaintiff argued that the hospital by-laws constituted a contract between him and the hospital and that the revocation of his privileges amounted to a breach of that contract. He also argued that the receipt of public funds and the use of a trust naming the City of Ponca City as beneficiary made any action taken by the hospital state action. The Court disagreed, explaining, "[T]here must be [a] causal connection between the state conduct or involvement and the injury complained of. State action and thus jurisdiction does not arise merely because private hospitals or other institutions receive governmental aid." *Id.* at ¶ 16, 545 P.2d at 740. The Court held that "there is no judicial review of Hospital's termination of plaintiff's staff privileges, absent either a showing of a causal relationship between the state's activity and the activity causing the injury, or a claim of discrimination because of race, sex or age." *Id.* at ¶ 22, 545 P.2d at 742. Because the hospital's actions were not subject to judicial review, the Court did not reach the contract issue. *Id.* at ¶ 24, 545 P.2d at 742.

¶ 12 Another case we find helpful is *Theissen v. Watonga Municipal Hospital Board*, 1976 OK 66, 550 P.2d 938. Although *Theissen* involved judicial review of a public hospital's staffing decision, the Supreme Court quoted the following language from a federal district court case which had determined that a private hospital's staffing decisions are not subject to judicial review:

There are sound reasons that lead the courts not to interfere in these matters. Judicial tribunals are not equipped to review the action of hospital authorities in selecting or refusing to appoint members of medical staffs, declining to renew appointments previously made, or excluding physicians or surgeons from hospital facilities. The authorities of a hospital necessarily and naturally endeavor to their utmost to serve in the best possible manner the sick and the afflicted who knock at their door. Not all professional men, be they physicians, lawyers, or members of other professions, are of identical ability, competence, or experience, or of equal reliability, character, and standards of ethics. The mere fact that a person is

admitted or licensed to practice his profession does not justify any inference beyond the conclusion that he has met the minimum requirements and possesses the minimum qualifications for that purpose. Necessarily hospitals endeavor to secure the most competent and experienced staff for their patients. Without regard to the absence of any legal liability, the hospital in admitting a physician or surgeon to its facilities extends a moral imprimatur to him in the eyes of the public. Moreover not all professional men have a personality that enables them to work in harmony with others, and to inspire confidence in their fellows and in patients. These factors are of importance and here, too, there is room for selection. In matters such as these the courts are not in a position to substitute their judgment for that of professional groups.

*Id.* at ¶ 26, 550 P.2d at 941 (quoting *Shulman v. Washington Hosp. Ctr.,* 222 F.Supp. 59, 64 (D.D.C.1963)).

¶ 13 The Court also quoted the following language from a Fifth Circuit case:

No court should substitute its evaluation of such matters [as hospital staffing decisions] for that of the Hospital Board. It is the Board, not the court, which is charged with the responsibility of providing a competent staff of doctors. The Board has chosen to rely on the advice of its Medical Staff, and the court cannot surrogate for the Staff in executing this responsibility. Human lives are at stake, and the governing board must be given discretion in its selection so that it can have confidence in the competence and moral commitment of its staff.

*Id.* at ¶ 28, 550 P.2d at 942 (quoting *Sosa v. Bd. of Managers of Val Verde Mem'l Hosp.,* 437 F.2d 173, 177 (5th Cir.1971)). We, therefore, conclude that the trial court did not have jurisdiction to review BAMC's revocation of Medcalf's privileges and did not abuse

its discretion in refusing to reconsider the partial summary adjudication.

¶ 14 Medcalf also argues that *Murphree* does not dispose of his individual claims against Dr. Coleman and Switzer. The only allegations Medcalf made against Coleman and Switzer were that they were members of the Medical Executive Committee which upheld his suspension; that their action in suspending him amounted to intentional infliction of emotional distress; and that they maliciously interfered with his employment contract. Because Medcalf's claims against Coleman and Switzer arise from BAMC's staffing decision, *Murphree* disposes of his claims against them.[4] Moreover, even when viewed in a light most favorable to Medcalf, *see Shelley v. Kiwash Elec. Coop.,* 1996 OK 44, ¶ 15, 914 P.2d 669, 674, he did not plead specific facts to survive summary judgment on his claims for malicious interference with contract and intentional infliction of emotional distress.

¶ 15 AFFIRMED.

TAYLOR, P.J., and STUBBLEFIELD, J., concur.

---

4. Medcalf has cited numerous authorities from other jurisdictions which purportedly allow judicial review of a hospital's staffing decisions. Because *Ponca City Hosp., Inc. v. Murphree,* 1976 OK 4, 545 P.2d 738, is directly on point, we cannot consider those authorities. We note that

the Court of Civil Appeals has applied *Murphree* in two unpublished cases factually similar to this case with the same result. *See Rosenfeld v. Thirteenth St. Corp.,* Appeal No. 68,505 (1988) and *Trang v. Integris Baptist Med. Ctr., Inc.,* Appeal No. 91,791 (1999).