2004 OK CIV APP 52

**The Matter of the Assessment of Certain Personal Property Owned by Visteon Corporation for Tax Year 2002,**

**VISTEON CORPORATION, Appellant,**

v.

**Ken YAZEL, In his Official Capacity as County Assessor of Tulsa County, Oklahoma, Appellee.**

**No. 100,351.**

Court of Civil Appeals of Oklahoma, Division No. 3.

May 7, 2004.

---

William K. Elias, Linda Jo Blan–Byford, Elias, Books & Brown, Tulsa, OK, for Petitioner/Appellant.

Thomas G. Potts, David W. Wulfers, Cornelius P. Dukelow, James, Potts & Wulfers, and Linda K. Graves, Office of the District Attorney, Tulsa, OK, for Respondent/Appellee.

Opinion by CAROL M. HANSEN, Judge:

¶ 1 Visteon Corporation (Visteon) appeals from the trial court's order dismissing its appeal of the Tulsa County Equalization Board's (Board) order which established the fair cash value of Visteon's business personal property for the tax year 2002.[1] Appellee, the Tulsa County Assessor (Assessor) had moved for dismissal, arguing the trial court lacked subject matter jurisdiction because [a] Visteon failed to give statutory notice to the Tulsa County Treasurer that it had appealed Board's denial of its formal protest, and [b] Visteon had failed to pay its 2002 business personal property *ad valorem* taxes under protest.

¶ 2 On June 11, 2002, Visteon filed its Petition in the trial court pursuant to 68 O.S.2001 § 2880.1 [2] (hereafter § 2880.1) seeking a trial *de novo* "to correct the assessment made by the County Assessor and the [Equalization] Board." Visteon alleged the County Assessor "failed to utilize proper methodology in determining the fair market value" of its personal business property was $81,214,566, making the valuation arbitrary and excessive.

¶ 3 Visteon paid the first half of its 2002 county property taxes on December 16, 2002, and the second half on March 20, 2003. Each check was for the total amount of $705,373.50, which included $530,290.50 for the business personal property portion. The parties agree the taxes were fully and timely paid. At issue, however, is whether there were any accompanying documents with the checks when they were received by the County Treasurer. As explained below, the documents would be relevant to determining if Visteon preserved its right to the district court appeal.

¶ 4 After filing his Answer, Assessor moved to dismiss Visteon's 2002 assessment appeal from the consolidated actions. Assessor asserted the trial court lacked subject matter jurisdiction over that appeal because Visteon had not given proper notice in accor-

1. Appeals by Visteon and Assessor for the tax year 2003 business personal property assessment remain pending in the trial court, but the court made the requisite findings pursuant to 12 O.S. 2001 § 994 for immediate appeal of its determination on the 2002 assessment. The Tulsa County Board of Equalization was initially joined in this consolidated action, but was dismissed with prejudice and is not a party to this appeal.

2. Section 2880.1(A) provides, in part, that "[both] the taxpayer and the county assessor shall have the right of appeal from any order of the county board of equalization to the district court upon questions of law or fact including value, or upon both questions of law and fact."

dance with 68 O.S.2001 § 2884(B) (hereafter § 2884(B)) when the 2002 taxes were paid. Section 2884(B) provides, in pertinent part, that when protested taxes are paid:

> ... the person protesting the taxes shall give notice to the county treasurer that an appeal involving such taxes has been taken and is pending, and shall set forth the total amount of tax that has been paid under protest.... The notice shall be on a form prescribed by the Tax Commission.... The taxpayer shall attach to such notice a copy of the petition filed in the court or other appellate body in which the appeal was taken.

¶ 5 In his motion to dismiss, Assessor asserted the requisite § 2884(B) notice form and copy of petition were not included when Visteon mailed its payments to the Tulsa County Treasurer. In support of his motion to dismiss, Assessor attached certain documents and affidavits of various county employees who were regularly involved in the operation of the County Treasurer's office and in receipt of mail in the court house and Treasurer's office. Assessor argued the evidentiary materials showed Visteon had not complied with § 2884(B).

¶ 6 Visteon, in response, contended it had met the requirements of § 2884(B) by enclosing the required notice and pleading, but additionally argued that once the district court properly had subject matter jurisdiction, it could not lose it. Visteon further argued § 2884(B) does not require abatement of a pending appeal for failure to comply with its notice requirements. Visteon attached copies of the notice form in controversy, which it asserts was properly sent with the initial 2002 tax payment, and other documents and affidavits purporting to establish compliance with § 2884(B).

¶ 7 The initial inquiry must be whether compliance with § 2884(B) is a jurisdictional prerequisite to the district court's hearing the appeal. In *Means v. Blevins*, 1995 OK 76, 898 P.2d 1286, the Supreme Court held notice pursuant to § 2884(B) is a statutory condition for a trial court's jurisdiction to decide an appeal from a County Assessor's valuation decision. In *Means*, the taxpayer objected to the evaluation of prop-

erty, but failed to give notice to the County Treasurer that appeal had been taken from that evaluation. The Supreme Court issued a writ of prohibition from proceeding further in the district court case "for lack of jurisdiction for failure to comply with 68 O.S.1991 § 2884(B)." In doing so, the Court cited *Dolese Bros. Co. v. Board of Com'rs of Comanche County*, 1931 OK 480, 151 Okla. 110, 2 P.2d 955.

¶ 8 In *Dolese*, the district court had dismissed the taxpayer's appeal from the County Board of Equalization's determination because no transcript of the Board's hearing was filed with the appeal, and because the taxpayer failed to serve notice to the County Treasurer that the appeal was pending. Both the transcript and notice were statutorily required.

¶ 9 In language identical to that in § 2884(B), Section 9970, C.O.S.1921, provided that persons paying protested taxes shall give notice "that an appeal involving such taxes has been taken and is pending." The *Dolese* Court noted it was the taxpayer's duty to serve notice on the county treasurer "in order that taxes so paid might by him be held separate and apart from other taxes collected by him." The Court concluded:

> We think these provisions are mandatory, and must be complied with in order to confer jurisdiction upon the district court to entertain the appeal.

*Dolese*, 2 P.2d at 956; *See also, Antrim Lumber Co. v. Sneed*, 1935 OK 1144, 175 Okla. 47, 52 P.2d 1040.

¶ 10 The rationale expressed in *Dolese* for making notice to the treasurer mandatory and jurisdictional is as persuasive today as it was then. In fact, the treasurer's duty, as contained in § 2884(C), "to hold taxes paid under protest separate and apart from other taxes collected" is substantively unchanged from the original enactment in 1915. *See*, Laws 1915, c. 107, art.1, subd. B, § 6. Section 2884(E) provides for refund of property taxes paid under protest if the court finds the property was assessed at too great an amount. If proper notice of appeal is not given, the County Treasurer is obligated to apportion the taxes received and would be

left without proper reserves to make refunds. Such a situation would be antithetical to good business practices and good government.

■ ¶ 11 Therefore, and in view of Assessor's motion to dismiss for lack of subject matter jurisdiction, we hold that proof of Visteon's compliance with § 2884(B) is required for continuing jurisdiction in the trial court to determine if the assessed value was proper. "When a jurisdictional question arises, the burden of proof is upon the party asserting that jurisdiction exists." *Union Bank v. Ferris*, 1978 OK 149, 587 P.2d 454. The party asserting that jurisdiction exists here is Visteon.

■ ¶ 12 The parties are in conflict not only as to what the evidentiary materials establish, but also as to what procedure the trial court should have applied in considering those materials. Visteon contends the trial court's consideration of the evidentiary materials submitted in support of, and in opposition to, the motion to dismiss, converts the motion into one for summary judgment. Visteon, citing *In re Macfarline*, 2000 OK 87, 14 P.3d 551, then argues that because the motion is one for summary judgment, [a] the evidence must be considered in the light most favorable to it, the non-moving party, and [b] the motion may be granted only where there is no substantial controversy as to any material fact.

¶ 13 There clearly is substantial controversy as to material facts, *i.e.* whether the documents required by § 2884(B) were submitted with Visteon's December payment of the 2002 tax. However, we are more persuaded by Assessor's argument that under the facts here the trial court could properly consider the evidentiary materials to determine its jurisdiction without using the summary judgment procedure.

■ ¶ 14 We are not aware of any Oklahoma appellate decisions directly on this point, but in construing provisions of our pleading code, we may consider the federal counterpart from which it was derived. *Shaffer v. Jeffery*, 1996 OK 47, 915 P.2d 910. The pivotal provision from our pleading code here is 12 O.S.Supp.2002 § 2012(B). With certain additions not relevant to the question

before us, § 2012(B) is "virtually the same as Federal Rule of Civil Procedure 12(b)." *See,* Committee Comment to Section 2012.

¶ 15 Section 2012(B) provides, among other things, that:

> If, on a motion asserting the defense numbered 6 [§ 2012(B)(6) ] of this subsection to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by the rules for summary judgment.

¶ 16 Assessor argues the foregoing provision does not apply here because his motion to dismiss is not for failure to state a claim upon which relief can be granted, but for lack of jurisdiction over the subject matter under § 2012(B)(1). In *Holt v. U.S.*, 46 F.3d 1000 (10th Cir.1995), the Circuit Court of Appeals noted that under Rule 12(b)(1), the federal counterpart to § 2012(B)(1), "a party may, go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." The Circuit Court also noted that under Rule 12(b)(1), the trial court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts", and that "when reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." Under these circumstances, the Circuit Court held the court's reference to evidence outside the pleadings does not convert the motion to dismiss to a motion for summary judgment.

¶ 17 An exception discussed by the *Holt* Court, and asserted by Visteon as being applicable here, is where the jurisdictional question is "intertwined" with the merits of the case. In that instance, the district court is required to convert the 12(b)(1) motion to dismiss into a 12(b)(6) motion or a motion for summary judgment. In *Holt,* the Circuit Court said the jurisdictional question was intertwined with the merits if subject matter jurisdiction is dependent on the same statute

which provides the substantive claim in the case.

¶ 18 Here, the statute which provides the substantive claim is § 2880.1, which authorizes appeal to the district court from any order of the county board of equalization. The continuing subject matter jurisdiction which Assessor raises is dependent on the § 2880.1 appellant's compliance with the mandate of § 2884 to pay the protested taxes in full and to provide proper notice to the treasurer when the taxes are paid. The substantive claim does not arise from the same statute which regulates subject matter jurisdiction.

¶ 19 Additionally, the Tenth Circuit Court further clarified what it considered to be intertwined issues in *Davis ex rel. Davis v. U.S.*, 343 F.3d 1282 (10th Cir.2003). There, the parties on appeal disagreed whether the district court had dismissed Davis' claim under Rule 12(b)(1) or 12(b)(6). The plaintiffs argued that even if the defendant's motion to dismiss was properly construed as one under 12(b)(1), the district court was precluded from considering information beyond the allegations in the complaint because that would convert the motion into one for summary judgment, and the district court did not grant summary judgment.

¶ 20 The *Davis* Court, citing *Holt*, restated the rule that where subject matter jurisdiction is factually challenged, the court has wide discretion to consider matters outside the complaint without converting the procedure to one for summary judgment. They recognized the "intertwined" rule they had discussed in *Holt*, but found the rule inapplicable. The Court said that when deciding if jurisdiction is intertwined with merits, "the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim", citing *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320 (10th Cir.2002).

¶ 21 In *Davis*, the Circuit Court found jurisdiction was not intertwined with the merits because the substantive issue in the plaintiffs' case was whether plaintiffs had been improperly denied Certificate of Degree of Indian Blood cards, not whether a particular plaintiff had exhausted administrative remedies—the latter being the basis for dismissal. Similarly, the substantive issue in Visteon's case is the propriety of Assessor's evaluation methodology, not whether Visteon filed the appropriate notice with its tax payments. Resolution of the jurisdictional question does not require resolution of any aspect of Visteon's substantive claim. *Davis*, 343 F.3d at 1296. Jurisdiction was not intertwined with substance so as to require the summary judgment procedure. The trial court could properly consider the evidentiary materials in determining if the appeal should be dismissed for lack of subject matter jurisdiction.

¶ 22 The remaining question is whether the trial court properly concluded it did not have subject matter jurisdiction under the factual challenge before it. We answer that question in the affirmative. "Questions concerning a trial court's jurisdictional power invoke the *de novo* standard of review." *Medcalf v. Coleman*, 2003 OK CIV APP 53, 71 P.3d 53. Under a *de novo* standard we exercise "plenary, independent and non-deferential" authority to examine the trial court's legal rulings. *Id.*, at 55.

¶ 23 Visteon's primary evidentiary material in opposition to Assessor's motion to dismiss consists of two affidavits and documents supporting the affidavits. The first affidavit is from a Visteon employee in Michigan who was, at the time relevant here, the company's Tax Counsel and Director, State and Local Taxes. The affiant states she was advised of the need to pay the Tulsa County 2002 personal property taxes on time and with appropriate notice. She states she communicated this information to Visteon's property tax consultant, indicating tax payment was not to be made without notice of protest, and in December 2003 provided the notice form and copy of the appeal petition to the tax consultant. To her knowledge, no notice form accompanied the second half of the property tax payment.

¶ 24 The second affidavit is from the tax consultant's employee responsible for Visteon's account. She stated she received the communication from Visteon about providing documents with the payment to indicate pay-

ment was made under protest. She said she received the documents from Visteon, including a notice form stating the entire payment was made under protest, and mailed them with the check, which had the "check stub" attached. The phrase, "Payment made under protest—Visteon" was on the check stub. The certified mail delivery confirmation was returned to the tax consultant showing it had been received in the Tulsa County Treasurer's office on December 23, 2003. The second half of the personal property taxes were paid in March 2003, without notice of payment under protest.

¶ 25 As noted above, Assessor submitted several affidavits from persons involved in the court house handling of mail and operation of the Treasurer's office, along with Treasurer's documents concerning tax payments under protest. An affidavit from the county's senior mail clerk stated all county certified or registered mail is delivered to his office and sorted to be delivered or picked up by the mail clerks from the various county offices. Certified or registered mail for the Treasurer was picked up by Donald King.

¶ 26 Donald King provided an affidavit stating it was his principal job in the Treasurer's office to obtain, open and distribute mail. He will normally sign the green cards indicating receipt of the mailed items and mail them back to the sender, but on days when there are many green cards he will ask the receptionist in the office for help in signing the cards. The receptionist does not open or distribute the mail. Mr. King stated he had been trained to recognize protests of property tax assessments and to give them to the appropriate person in the Treasurer's office. He did not recall "receiving, opening or seeing a protest or other collection of documents relating to Visteon Corporation on December 23, 2002."

¶ 27 An affidavit from the Treasurer's receptionist stated she helped Donald King on occasion to sign green return receipt cards attached to certified or registered mail, but she did not open or distribute the mail throughout the Treasurer's office. She stated it was her signature, acting as agent of the Treasurer, on the receipt returned to Visteon.

¶ 28 Another affidavit was submitted from the Treasurer's employee responsible for processing protested tax payments. Mailed protested payments were delivered to her by Donald King. She reviews the documents for completeness, and if in compliance, she opens a protest file which includes copies of all necessary documents, including the notice form, petition, original of the check stub, if any, and the envelope from the taxpayer. She enters information on the protest on the tax rolls. She maintains the protest file until the protest is resolved. She also prepares the reports of protested tax payments required by law. She did not recall Donald King or anyone else delivering to her on December 23, 2002, any documents indicating Visteon intended to protest the 2002 personal property tax. She had reviewed the Treasurer's files on protested taxes and did not find any documents or record indicating Visteon's protest.

¶ 29 Assessor also submitted the affidavit of the Chief Deputy to the Treasurer, who is responsible for, among other things, custody of the Treasurer's records. The Chief Deputy stated Visteon did not file notice of protest with either its December 2002 or March 2003 payments. He also stated that because Visteon did not provide the notice, the funds received had been apportioned according to law. One of the documents accompanying this affidavit was the Treasurer's Report to the State Auditor, as required by 68 O.S.2001 § 2884(D), which did not include Visteon's tax payment as being made under protest. The Chief Deputy testified by deposition that his investigation in the Treasurer's office had failed to disclose receipt of any notice by Visteon of its protest.

¶ 30 Visteon made several objections to consideration of Assessor's evidentiary materials. We find these objections have no merit. The records from the Treasurer's office would be admissible in accordance with 12 O.S.2001 §§ 2803(6)(records kept in the course of regularly conducted business), 2803(8)(record of public office where there is a duty imposed by law to report), and 2803(10)(to prove absence of a record or nonoccurrence or nonexistence of a matter of which a public record was regularly made

and preserved). The Chief Deputy Treasurer's testimony that the Treasurer's office did not receive notice of protest from Visteon, as determined by his own investigation, would also be admissible under § 2803(10) to prove the absence of a record regularly made and preserved by the Treasurer's office.

¶ 31 An additional evidentiary matter is Visteon's contention that the notation on its check stub—Payment made under protest— is sufficient to show substantial compliance with § 2884(B). Without deciding if substantial compliance is acceptable under § 2884(B), we find the notation, presuming it was attached to the check when received in the Treasurer's office, insufficient under the facts here to have properly put the Treasurer on notice of the appeal.

¶ 32 The Supreme Court considered a similar argument in *Antrim Lumber Co. v. Sneed*, 52 P.2d at 1045. There, the only notice of protest was on the left hand corner of the payment check which read, "this tax paid under protest." The Supreme Court noted this phrase was:

> ... wholly insufficient since it failed to set forth any ground of complaint or to advise the defendant that any suit would be brought for the recovery of said tax.... For aught else that appears, it could have been just a method of expressing dissatisfaction with the tax and a reluctance to pay it.

¶ 33 While the statutory requirements in *Antrim* were somewhat different, the purpose and necessity for sufficient notice is the same, that is, to allow the responsible fiscal officer to reserve funds in case the tax or evaluation is judicially determined to be incorrect. The purported protest notice on the Visteon check stub, as presented in Visteon's brief, appears among other text on the stub and in the same size type. It is, as Assessor suggests, "almost unnoticeable", and not sufficiently distinguishable to conclude that the Treasurer's staff should have the duty to inquire from Visteon as to its meaning. To the contrary, the duty to comply is imposed on Visteon in accordance with § 2884(B).

¶ 34 Visteon argues that tax laws must be strictly construed against the sovereign, citing *Samson Hydrocarbons Co. v. Oklahoma Tax Com'n*, 1998 OK 82, 976 P.2d 532. While that may be the general rule, where the issue is the court's jurisdiction, the proponent of jurisdiction must be held to strict proof. *See, Macsuga v. Moreno*, 2003 OK 24, 66 P.3d 409 (Although the Workers' Compensation Act is to be construed liberally in favor of workers, claimant must be held to strict proof that he was an employee in order to be covered by provisions.)

¶ 35 We hold the trial court correctly determined, notwithstanding the conflicting evidence, that Visteon failed to meet its burden to prove compliance with § 2884(B). In the absence of such proof, the trial court was without jurisdiction to hear Visteon's appeal of the 2002 personal property tax assessment. Accordingly, the trial court's order is AFFIRMED.

JOPLIN, J., concurs; and MITCHELL, P.J., dissents with a separate opinion.

Dissenting Opinion by BAY MITCHELL, Presiding Judge:

¶ 1 The majority's opinion hinges on imposing a burden of "strict proof" on Visteon to prove compliance with the notice provision in 68 O.S.2001 § 2884(B) to establish the district court's jurisdiction to hear its appeal. Their sole authority is *Macsuga v. Moreno*, 2003 OK 24, ¶ 5, 66 P.3d 409, 411, a worker's compensation case that holds the claimant "must be held to strict proof that he was an employee of [respondant/employer] in order to be covered by the provisions of the [Workers' Compensation] Act." I disagree that strict proof is required and would instead only require that Visteon prove by "competent evidence" that they gave notice of their protest to the County Treasurer.

¶ 2 The statute we must interpret is 68 O.S.2001 § 2884(B), which provides:

> When such taxes are paid, or by December 31, whichever is earlier, the persons protesting the taxes *shall give notice* to the county treasurer that an appeal involving such taxes has been taken and is pending, and shall set forth the total amount of tax that has been paid under protest ... The notice shall be on a form prescribed by the

Tax Commission ... The taxpayer shall attach to such notice a copy of the petition filed in the court or other appellate body in which the appeal was taken ...

*Id.* (emphasis added). Nothing in § 2884 requires that taxpayers be held to *strict proof* of compliance with the notice provision or suffer the consequence of dismissal of their appeals.

¶ 3 I recognize Oklahoma cases have held that the notice requirement in § 2884(B) is jurisdictional. *See Means v. Blevins,* 1995 OK 76, 898 P.2d 1286; *Dolese Bros. Co. v. Board of Comm'rs of Comanche County,* 1931 OK 480, 2 P.2d 955. However, in those cases, it was undisputed that the taxpayers did not give proper notice of protest. The cases did not discuss the applicable burden of proof when the jurisdictional facts are disputed. This is an issue of first impression in Oklahoma that must be determined by interpreting this statute in accord with the Oklahoma Tax Code as a whole. For several reasons, I believe that *competent evidence* is the correct burden of proof to satisfy the notice requirement of § 2884(B). Visteon clearly met that burden with the evidence they presented.

¶ 4 *First,* there is no justification for applying the burden of strict proof from the Workers' Compensation Act to this notice provision. The majority opinion cites *Macsuga,* 2003 OK 24, 66 P.3d 409, for the proposition that the party seeking to establish jurisdiction is *always* held to strict proof. This is not an accurate statement of Oklahoma law. For example, a plaintiff only has the burden of proving the jurisdictional requirement of *in personam* jurisdiction by a "preponderance of the evidence." *Jim Marrs Drilling Co., Inc. v. Woolard,* 1981 OK CIV APP 23, ¶ 18, 629 P.2d 810, 813; *see also Union Bank v. Ferris,* 1978 OK 149, ¶ 5, 587 P.2d 454, 455 (emphasizing personal jurisdiction over nonresident defendants "must affirmatively appear from the record"). This is a standard somewhat less than preponderance of the evidence and probably akin to competent evidence. Similarly, in order to satisfy the jurisdictional requirement of timely filing the petition in error to commence an appeal, the appellant only has to prove they timely deposited the document in the United States mail, postage prepaid. 12 O.S. Supp.2002 § 990A(B). Significantly, the only proof required is the postmark affixed to the properly-addressed mail. *Id.; Whitehead v. Tulsa Public Schools,* 1998 OK 71, ¶ 5, 968 P.2d 1211, 1214 n. 10 (noting a postmark affixed to certified, priority or first class mail is proof of timely mailing). Even in federal courts, where the courts must presume there is no jurisdiction because they are courts of limited jurisdiction, the burden of proof for jurisdiction is no higher than preponderance of the evidence. *See, e.g., Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942) (stating party asserting diversity jurisdiction must provide "competent proof"); *McBride v. CITGO Petroleum Corp.,* 281 F.3d 1099, 1106 (10th Cir.2002) (stating plaintiff has the burden of proving subject matter jurisdiction requirement of exhaustion of administrative remedies by competent evidence); *U.S. ex rel Stone v. Rockwell Intern. Corp.,* 282 F.3d 787, 797–98 (10th Cir.2002) (applying preponderance of evidence burden to review subject matter jurisdiction requirements under federal False Claims Act); *U.S. ex rel. King v. Hillcrest Health Center, Inc.,* 264 F.3d 1271, 1278 (10th Cir.2001) (emphasizing federal courts are courts of limited jurisdiction and party alleging jurisdiction has burden of "alleging the facts critical to jurisdiction and coming forth with competent proof."). There are varying standards of proof for jurisdictional requirements. Choosing a burden of "strict proof" without any discussion or justification is unwarranted.

¶ 5 There is no similarity between the requirement of notice in § 2884(B) and the requirement that a claimant show he is an employee under the Workers' Compensation Act that justifies imposing the same burden of strict proof. Strict proof is required to establish workers' compensation jurisdiction because that system is set up to *only provide benefits to employees.* Establishing an employer/employee relationship is a condition precedent for establishing jurisdiction. If the workers' compensation claimant cannot prove the existence of the necessary employment relationship, the Act is inapplicable and

the claimant is not entitled to workers' compensation benefits.

¶ 6 Here, by contrast, the majority's application of the standard of strict proof operates to dismiss a *pending* appeal that is proper in all other respects, even though the taxpayer had taken all reasonable steps to comply with the notice requirement. Compliance with § 2884 was not a condition precedent to filing this appeal. Instead, the appeal had already been initiated by filing a Petition in the district court after the taxpayer had exhausted their administrative remedies by unsuccessfully appealing the County Assessor's valuation to the Board of Equalization. There is no statutory or policy justification for applying the heavy burden of *strict proof* to the notice requirement in § 2884(B) when the appeal is pending and proper in all other respects.

¶ 7 *Second*, the Legislature provided in § 221.1 of the Uniform Tax Procedure Code [1] that mailing by registered mail is *prima facie evidence* that the *document was actually delivered* to the agency to which it was addressed. 68 O.S.2001 § 221.1. The relevant portions of this provision provide:

A. For any return, claim, statement, *or other document* required to be filed or any payment required to be made within a prescribed period ... under authority of any provision of a tax law of this state, the date of the postmark stamped on the cover ... shall be deemed to be the date of delivery or the date of payment, as the case may be.

B. The provisions of this section shall apply only if: ...

2. The ... document or payment was ... deposited in the mail in the United States in an envelope or other appropriate wrapper, postage prepaid, properly addressed to the ... office with which the ... document is required to be filed ...

* * * *

D. For purposes of this section, if any ... document or payment, is sent by Unit-

ed States registered mail, the *registration shall be prima facie evidence* that the ... document was delivered to the ... office to which addressed, and the date of registration shall be deemed the postmark date. The Tax Commission is authorized to provide by rules or regulations the extent to which the foregoing provisions of this subsection with respect to prima facie evidence of delivery and the postmark date shall apply to certified mail ...

68 O.S.2001 § 221.1.

¶ 8 The purpose of the Uniform Tax Procedure Code is to provide uniform procedures and remedies *for all state taxes*, and its provisions "shall control and shall be exclusive" unless expressly excluded by a specific state tax law. 68 O.S.2001 § 201. Nothing in the Ad Valorem Tax Code (68 O.S.2001 §§ 2801–3152) or § 2884 in particular, excludes the application of the presumptive mailing rule in § 221.1. In fact, requiring strict proof of notice is in direct conflict with the presumption of *prima facie* evidence of delivery.

¶ 9 Another strong argument for applying the presumptive mailing rule to the notice of protest required in § 2884 is that there is a presumptive mailing provision in 68 O.S.2001 § 2876, which sets out the procedure for notification by the County Assessor to the taxpayer of an increase in the assessed value of the taxpayer's property. If the County Assessor increases the valuation of a taxpayer's property, the assessor is only required to give written notice to the taxpayer. 68 O.S. 2001 § 2876(A). *That notice is adequate if it is "mailed or delivered to the last known address" of the taxpayer.* § 2876(C). *"Duplicate copies of the notice showing the date of issuance and mailing or delivery, shall be kept in the office of the county assessor ... [and] shall be prima facie evidence as to the fact of notice having been given as required by this section." Id.* (emphasis added); *see also* 68 O.S.2001 § 208 (provision of Uniform Tax Procedure Code that specifically states *mailing to last-known address "shall be pre-*

1. Article 2 of the Oklahoma Tax Code (68 O.S. §§ 201–264) is designated in § 201 as the "Uni-     form Tax Procedure Code."

*sumptive evidence of receipt"* for any notice Tax Commission must give, and failure to actually receive notice does not invalidate Commission's action or relieve taxpayer of interest or penalties). The taxpayer then has twenty days "from the date the notice was mailed ... in which to file a written complaint with the county assessor ..." § 2876(D). The assessor shall notify the taxpayer of the final action taken and it is only required that the "notice shall be mailed or delivered within one working day" of the action taken. § 2876(F). The taxpayer may then appeal to the County Board of Equalization by mailing or delivering a copy of the appeal form to the county assessor and another to the equalization board. *Id.* Written notice is required at each stage of this protest/appeal process, but nowhere in this statutory scheme is there a requirement that notice be proven by anything approaching "strict proof" or that "receipt" of the notice must be proven. Interpreting § 2884 as requiring strict proof of notice is a serious and unwarranted inconsistency with § 2876. Thus, the proof of mailing presumptions should clearly apply to the notice requirement in § 2884, and proof of mailing by registered or certified mail is *prima facie* evidence of delivery on the date marked on the mail.

¶ 10 Regulations by the Oklahoma Tax Commission have further specified that the date of the United States postmark is the date of filing for "any claim, statement, or other document required by law or agency Rule to be filed ...". Oklahoma Administrative Code 710:1–3–30. Further, the regulations provide that when a document is sent *by certified mail,* the date of the postmark on the receipt is the date of the delivery. Oklahoma Administrative Code 710:1–3–32. Importantly, these presumptive mailing rules apply even if the document is not actually received, as noted in regulation 710:65–3–2 titled "Timely Mailing Treated as Timely Filing and Paying," which provides:

> (a) Any report, claim, tax return, statement or other document required or authorized to be filed with or any payment made to the Commission, which document or payment is transmitted through the United States mail, will be deemed to have been filed with and received by the Commission on the date shown by the post office cancellation mark stamped upon the envelope or other appropriate wrapper containing it. *If mailed but not received by the Commission,* or if received but the cancellation mark is illegible, erroneous or omitted, or envelope unavailable, *the document or payment will be deemed to have been filed on the date it was mailed if the sender establishes by competent evidence that the document or payment was deposited in the United States mail on or before the date due for filing ...*
>
> (b) If any ... document is sent by United States registered mail, certified mail or certificate of mailing, *a record authenticated by the United States Post Office of such registration, certificate or certificates shall be considered competent evidence* that the ... document was mailed, and the date of registration, certification or certificate shall be deemed to be the date of the postmark made by the United States Postal Service.

Okla. Admin. Code 710:65–3–2 (emphasis added).

¶ 11 Thus, under this regulation, only *competent evidence* is required to prove filing of any document with the Oklahoma Tax Commission. Further, a receipt for certified mail, standing alone, is competent evidence to satisfy this burden of proof. Although this regulation is listed under the section for sales tax, its plain language applies to any document required to be filed with the Commission. Also, it refers to Oklahoma Administrative Code regulations 710:1–3–30 and 710:1–3–31, the general regulations regarding filing by mailing *that apply to any document or act required by the Oklahoma Tax Code.* Section 2884 does not set out any different standard for providing notice to the County Treasurer than that established for all filings submitted to the Tax Commission, and there is no justification for establishing a different rule where the statute is silent as to the burden of proof.

¶ 12 Oklahoma cases have applied the general "presumptive mailing rule" in several other areas where notice is required. This

rule provides: "When a letter is placed in the mail system bearing a correct address and sufficient postage to reach its destination, a rebuttable presumption arises that the letter did in fact reach the addressee. *In the absence of sufficient rebuttal evidence, the presumption prevails.*" *Booth v. McKnight,* 2003 OK 49, ¶ 3, 70 P.3d 855, 858 n. 6 (applying presumptive mailing rule to notice of hearing required for final accounting in probate action) (emphasis in original); *see also Shamblin v. Beasley,* 1998 OK 88, ¶ 23, 967 P.2d 1200, 1212 n. 51 (applying presumption of mailing to pre-sale notice of tax sale); *Liberty Plan Co. v. Francis Smith Lumber Co.,* 1961 OK 30, ¶ 14, 360 P.2d 500, 504 (applying presumption of receipt of properly addressed letter to notice of claim required to enforce mechanic's lien); 12 O.S.2001, Ch. 15, App. 1, Okla. Sup.Ct. R. 1.4(c) (stating a petition in error that is mailed by the United States Postal Service is considered filed with the Oklahoma Supreme Court on the date of the postmark).

¶ 13 The only burden required should be "competent proof," as stated in Oklahoma Administrative Code 65–3–2, and that burden was satisfied by Visteon sending the protest certified mail, return receipt requested.

¶ 14 *Finally,* the burden imposed by the majority conflicts with mandatory rules of statutory construction for taxation cases and for appellate cases. As a general rule, courts will liberally construe appellate statutes to further justice and to favor the right of appeal. *AP–Prescott One Ten LP v. Clay,* 2001 OK CIV APP 128, ¶ 11, 34 P.3d 1169, 1171; *City of Tulsa v. Board of Trustees of Police Pension & Retirement System,* 1963 OK 267, ¶ 8, 387 P.2d 255, 258 (stating statutes giving the right of appeal "should be liberally construed in furtherance of justice . . .").

¶ 15 Further, tax laws *must* be strictly construed against the State, and any ambiguity must be resolved in favor of the taxpayer. *See, e.g., Samson Hydrocarbons Co. v. Oklahoma Tax Comm'n,* 1998 OK 82, ¶ 8, 976 P.2d 532, 536. The majority opinion recognizes this rule, but then ignores it by choosing the strictest burden of proof and imposing it on the taxpayer without justifying why this burden should apply in an *ad valorem*

tax appeal. The effect of applying this burden of proof is to greatly favor the county, in contradiction of our rules of construction in tax cases. Oklahoma courts do not have any discretion to ignore these canons of construction and impose by judicial fiat a burden of strict proof that was not intended by the Legislature.

¶ 16 When applying these rules of construction and policies that protect the taxpayer's appeal to the notice requirement in § 2884(B), it is clear the burden of proof for complying with the notice provision should only be the same competent evidence test required for proving filing of any document or payment with the Oklahoma Tax Commission. I recognize that the purpose of the notice provision is to allow the treasurer to apportion all payments that are not protested and not be forced to refund sums that have already been apportioned. 68 O.S.2001 § 2884(C). However, this purpose does not override the requirement that tax statutes be strictly construed in favor of the taxpayer. If the Legislature had wanted to impose a burden of strict proof to protect the County Treasurer's office, they certainly could have done so, but they did not. Instead, they established the presumptive mailing rule in § 221.1, and did not exclude this rule from applying to § 2884. Where the taxpayer proves they gave notice of the protest by proper mailing, the risk that the notice was not actually received or not processed correctly by the treasurer's office should not fall on the taxpayer by taking away his right to appeal.

¶ 17 When the burden of strict proof requirement is removed and the competent evidence test is applied, it is clear that Visteon produced more than competent evidence that they complied with the notice provision in § 2884. Visteon produced evidence that they mailed the protest packet with their tax payment check by certified mail, return receipt requested. Visteon attached an affidavit from their general counsel stating she prepared the protest form and gave the form and the petition to their tax consultant. Visteon also included an affidavit from the tax consultant stating she placed all the protest information in the envelope with the check

and sent it by certified mail to the County Treasurer's office. The signed receipt was returned evidencing delivery and receipt. Visteon also received a receipt showing their check had been processed. Since all the information was sent together, Visteon had no reason to suspect the County Treasurer's office had not received or processed the protest information. Visteon produced its copy of the signed and dated notice of protest form and a copy of the petition they sent to the Treasurer's office. Visteon also produced copies of several e-mails showing they knew exactly what was required by § 2884 and setting out their procedure for complying with the requirements provided therein. This evidence is certainly competent proof that Visteon sent all of their protest information with their tax payment by certified mail to the County Treasurer's office *and that it was received.*

¶ 18 On the other hand, the Treasurer's office produced evidence that they did not actually receive Visteon's protest packet. They produced affidavits from the person who normally opens this mail and the person who processes these protests, who stated they did not see a protest by Visteon. This evidence, however, is not sufficient to overcome the presumption of receipt because there were deficiencies and gaps in their evidence and in their procedure for processing these protests.

¶ 19 The majority opinion discusses some of the relevant evidentiary material, but there is additional critical evidence that it fails to mention. Keith Hamilton, the Chief Deputy Treasurer for Tulsa County, testified in his deposition that the majority of tax payments are processed by an outside company, Bank of Oklahoma (BOK). He estimated that out of 200,000 payments received per year, only 30,000 are actually processed by the Tulsa County Treasurer's Office. For the rest of the payments, an employee from BOK opens the envelope and processes any standard payment. However, BOK employees forward any *nonstandard* payments to the Treasurer's office for processing. Nonstandard payments include partial payments, delinquent payments and payments that include protests.

¶ 20 The majority also fails to point out that the mail room maintains a log of *all* certified mail received by Treasurer's office. Interestingly, Visteon's certified mail was *not* listed in the log even though it was undisputed Visteon's check was actually received by the Treasurer's office and the certified mail receipt was signed and returned to Visteon. Brad Schell, an employee in Administrative Services for Tulsa County, testified that it is standard procedure to log in *all certified mail* that comes directly to the Tulsa County Treasurer. Since Visteon's mail was not logged in, it is probable that Visteon's mail was initially received and opened by the outside processor and then forwarded with other nonstandard payments to the Treasurer's office. *The only reason* this payment would be nonstandard would be if it included protest information. The payment was not late and it was not a partial payment. Thus, the Treasurer's office should have known when they received Visteon's payment that it was nonstandard.

¶ 21 The Treasurer's office failed to provide any evidence that Visteon's payment was not initially handled by BOK and then forwarded to the Treasurer's office. They did not include any affidavits from employees at BOK stating that they did not see a protest from Visteon. In light of the evidence presented and the reasonable inferences drawn therefrom it is quite possible the protest information was lost or misplaced when the envelope was opened by BOK or forwarded to the Treasurer's office. The Treasurer's department also admitted that they routinely throw away the envelopes and the check stubs, which could have resulted in Visteon's protest information being accidentally discarded. Because of the evidentiary gaps and the potential problems in the processing of protests, the Treasurer's proof that they did not receive the protest is less probative than Visteon's direct proof of compliance.

¶ 22 The evidence demonstrates that Visteon took all reasonable steps to comply with the notice provision and be able to prove compliance if necessary. In the normal course of business, proof of mailing is usually accomplished by certified mail and by keep-

ing a copy of the information that was mailed. This method is specifically authorized by 68 O.S.2001 § 221.1 and regulations of the Oklahoma Tax Commission. Further, Visteon's general counsel and tax consultant are located out-of-state in Michigan. It would not be reasonable to expect them to hand-deliver the protest information. It is also not reasonable to require them to demand proof of receipt of their protest notice. The statutes set out all the steps a taxpayer must take. It does not require hand-delivery and *it does not require proof of receipt* in order to satisfy the notice provision. Visteon received proof that their envelope had been received and also received proof that their payment had been processed. They were entitled to assume their notice of protest had also been received. The law does not require anything more of Visteon to preserve their right to appeal. Any other decision would jeopardize taxpayers' rights to appeal when they have taken all reasonable steps to give the required notice to the Treasurer's office. In addition, it would reward the County when the Treasurer's office fails to properly process notices of protest.

¶ 23 For these reasons, I would reverse the trial court's dismissal of Visteon's appeal and remand to allow the appeal in district court to continue. The affidavits by Visteon's employees that they specifically remember sending the protest information with their tax payment, coupled with the signed and dated copies of the protest documents and the certified receipt of their mailing constitute competent evidence that they gave notice of their protest to the County Treasurer's office. Visteon satisfied their burden under § 2884. "Strict proof" is not, and should not be required.